**UNITED STATES of America, Plaintiff,**

**v.**

**REAL PROPERTY LOCATED AT 110 COLLIER DRIVE, ALBERTVILLE, ALABAMA, together with all improvements, fixtures, and appurtenances thereon; $8,861.00 in United States Currency, and One (1) 1988 Nissan Maxima, Vin JN1HU11P2JT613264, Alabama License No. "HAIR TZR", Defendants.**

**Civ. A. No. 90–C–1604–M.**

United States District Court,
N.D. Alabama,
Middle Division.

June 26, 1992.

Jack W. Selden, Linda Sullivan Trippe, James D. Ingram, U.S. Attorney's Office, Birmingham, Ala., for U.S.

John C. Gullahorn, Roger Dale Centers, Centers Mitchell & Mitchell, Albertville, Ala., for Bank of Albertville.

Roger Dale Centers, Centers Mitchell & Mitchell, Albertville, Ala., for defendants.

Randy H. Beard, Guntersville, Ala., for claimants.

Charles Y. Boyd, Rhea Boyd & Rhea, Gadsden, Ala., for claimant Deborah Candice Hall Moon.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

In this forfeiture action,[1] the United States claims that the claimant Julie Moon's house and car were used or intend-

---

1. 21 U.S.C. § 881.

ed to be used to facilitate a violation of federal drug laws. It claims that the $8,861.00 in currency found in the house was furnished in exchange for controlled substances.[2] Based on affidavits submitted in support of plaintiff's motion for summary judgment and the lack of controverting affidavits, the Court has previously ordered forfeiture of the house and car. In light of the evidence adduced at trial, the forfeiture order is due to be set aside. The action is due to be dismissed on the conclusions: (1) that the house was never subject to forfeiture; (2) that assuming probable cause existed for the forfeiture of Julie Moon's car, she is an "innocent owner" thereof; and (3) the United States has failed to establish probable cause for the forfeiture of the currency.

## I. The Search and Its Fruits

On July 30, 1990, law enforcement officials of Marshall County, Alabama, obtained and executed a search warrant at the home of Julie Moon, 110 Collier Drive, in Albertville, Alabama. The search of the main level of the house yielded five small bags or containers of marijuana; two containers of cocaine with a total weight of .002 ounces, resin of marijuana (hashish) weighing .3 ounces, razor blades, a set of scales, and mirrors. A search of the person of William Moon, Julie's husband, disclosed a set of scales and $185.25 in cash. A search of his car produced a small bag of marijuana and a napkin containing marijuana. The total weight of the marijuana found in the house and car was 4.3 ounces. The basement search revealed $8,861.00 in cash, located in several white envelopes—one of which included only Two Dollar notes—hidden in a dresser drawer. When Julie Moon arrived home from work, the search of the house was well underway. The search of Julie Moon's 1988 Nissan Maxima yielded a marijuana seed on the floorboard, an amber-colored vial with a white powder residue in the glove compartment, and a set of scales in the trunk. The

drugs and other items were inventoried and retained by the law enforcement officials.

After examining the quantity of drugs seized, the officers executing the search warrant reasonably concluded that the drugs had been acquired for personal use, rather than resale.[3]

On August 6, 1990, the Alabama Department of Forensic Sciences reported to William Lozo the results of its investigation, including the quantities of drugs involved.

## II. The Verified Complaint And The Arrest of the Property and Cars

The verified complaint, filed a week after the search, was signed by Assistant United States Attorney James D. Ingram and verified by James R. Brandt, Special Agent of the Federal Bureau of Investigation. It recited, *inter alia* that:

> ... Further, marijuana and a small bottle containing cocaine were seized from the defendant 1988 Nissan Maxima ... located in the driveway of the premises and owned by Julie Moon.
> 6. That the defendant real property was used or intended to be used to facilitate a violation of federal drug laws ... and is, therefore, subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).
> 7. That the defendant currencies are monies are [sic] things of value furnished in exchange for controlled substances, to-wit: marijuana and cocaine, and/or all proceeds traceable to such an exchange and are therefore subject to forfeiture....

Complaint, p. 3.

Based on the verified complaint, this Court found probable cause to believe that the real property, vehicles and currency were all subject to forfeiture and, accordingly, ordered that they be arrested. The order directed the United States Marshal "to take custody of and to detain in his possession those defendant properties until further order of this Court...."

---

**2.** The properties and currency sought to forfeited exceed $110,000 in value.

**3.** The contrary testimony of Guntersville Policeman William Lozo is expressly discredited by the Court.

Julie Moon and William Moon duly filed separate claims to the arrested property.[4] Only Julie Moon's claims remain.

## III. The False and Misleading Affidavits and the Summary Forfeiture of the House and Car

The United States subsequently moved *for summary judgment in its favor on the* house and car. The motion was supported by the affidavits of Phillip Vandergrift and William Lozo. In describing the search of Julie Moon's vehicle, Vandergrift swore that "... we also seized marijuana, cocaine, and drug paraphernalia from Julie Moon's 1988 Nissan Maxima." The affidavits were executed on January 4, 1991. Neither the *motion for summary judgment,* the supporting affidavits, nor memorandum of law mentions the quantity of drugs involved. Rather they focus on "numerous baggies of marijuana, cocaine, and hashish, along with assorted drug paraphernalia...." Based on the uncontroverted affidavits and memorandum of law,[5] the Court granted summary judgment and ordered forfeiture of the house and car on January 17, 1992.

### A.

■ At trial, the officer who searched Julie Moon's car testified that the "quantity of marijuana on the front floorboard" of the car consisted solely of *a single "dried marijuana bud."* [6] The "small brown bottle containing cocaine in the glove compartment" of the car turned out to be an amber vial containing the residue of a white powder whose quantity was so minimal that it was not tested by the State Department of Forensic Sciences. At best, all that can be said about the car, in terms of probable cause for forfeiture, is that it contained drug paraphernalia, i.e., the vial and the scales.

**4.** William Moon only claimed his vehicle, the 1986 Plymouth Conquest. For some reason not made known to the Court, the United States obtained an order dismissing the forfeiture action against this vehicle.

**5.** It appears that Julie Moon's counsel had not informed the Clerk of the Court of his change of address, and consequently the summary judg-

In any event, the Court finds and concludes that Julie Moon was blissfully unaware that her husband may have dropped a marijuana seed on the floorboard of her car, and that he had left a vial in the glove compartment and a set of scales in her trunk. She proved, by a preponderance of the evidence at trial, that she is an "innocent owner," within the meaning of the forfeiture statute, 21 U.S.C. § 881(a)(4)(C).

### B.

■ The failure of the Government's pretrial papers to indicate the precise quantity of drugs found, and its allusions to "numerous baggies of marijuana cocaine and hashish" disguises the fact that the total quantity of the drugs found in the house and its environs would not support a felony charge of drug possession under federal law. 21 U.S.C. § 841(b)(1)(A)(ii)(II), (vii). This fact is fatal to the United States' forfeiture proceeding against the house, for the forfeiture statute covers only that real property "... which is used, or intended to be used ... to commit ... a violation of [the drug laws] punishable by more than one year's imprisonment." 21 U.S.C. § 881(a)(7). *The Julie Moon house clearly was never subject to forfeiture, under the undisputed evidence in this case!* Only by failing to properly disclose the quantity of drugs involved was the United States able to maneuver the Court into ordering a forfeiture of the real property owned by Julie Moon.

## IV. The Misappropriated Arrested Currency and the Lack of Probable Cause

■ In February 1992, Julie Moon submitted an affidavit stating that the forfeited currency had been given to her by her father over a long period of time before his death and that she had kept it in a chest of

ment scheduling order and the order of forfeiture were sent by the Clerk to his old address. The Court erroneously denied his motion to set aside the Order of Summary Judgment.

**6.** There was no forensic confirmation that the bud or seed was, in fact, marijuana.

drawers in her basement for such a long time that it had mildewed. Included in the currency was a collection of Two Dollar bills, which also had been given to Julie Moon by her father, who had served as a director of the Central Bank of Albertville. At trial, her testimony was corroborated by her mother. For some reason, and despite the order authorizing the arrest of the currency, the currency itself was unavailable at trial. The United States indicated that it had been returned to general circulation, i.e., misappropriated.

The Court infers that if the arrested currency had been produced in court, its mildewed state would have been obvious. It finds and concludes that none of the $8,861.00 in currency was either furnished or intended to be furnished by any person in exchange for a controlled substance, traceable to such an exchange, or used or intended to be used to facilitate any violation of the nation's drug laws. 21 U.S.C. § 881(a)(6). The simultaneous presence of $8,861.00 in mildewed currency and a small amount of drugs for personal use in the home of a well-to-do citizen does not establish probable cause that the currency was intended to be used for the exchange of drugs.

While the United States had failed to establish probable cause for forfeiture of the currency, Julie Moon has proved, by a preponderance of the evidence, that the existence of the currency is totally unrelated to any intended or actual drug exchange(s) or other violation of the nation's drug laws.

### V. Remedy

The United States has visited an injustice on Julie Moon, and it has misled this Court into the role of an unwitting participant. Her currency—including what may or may not be a valuable collection of Two Dollar notes—has been taken without probable cause and confiscated without legal authorization. Her car—with the im-

primatur of the Court—has been taken from her and returned to the lienholder. The Court is informed that it may have been sold by now. Her home, again under erroneous but nonetheless effective order of this court, has been forfeited and is now listed for sale by the United States Marshal.

The Court shares some of the blame for this travesty of justice. It should have more closely examined the papers, for example, and demanded that the quantity of drugs be specified before finding probable cause for forfeiture of the real property, and it should have insisted that the quantity be specified as a condition of granting summary forfeiture of the house. It was misled particularly by the affidavits of the state law enforcement officials whose agencies stand to gain financially as a result of the forfeiture.[7] More vigorous advocacy by Julie Moon's counsel would have benefitted the Court.

The Court shall, of course, order that the forfeited property be returned to Julie Moon and the value of her currency be paid to her, to the extent that such can be done. Costs shall be taxed against the United States.

Because it appears to the Court that the papers filed in this action may have violated Rule 11 of the Federal Rules of Civil Procedure, show cause orders shall issue in due course to the Assistant United States Attorney and the affiants.

In the meanwhile, the Court apologizes to Julie Moon.

---

7. The drug forfeiture statute provides, *inter alia:*
    Whenever property is civilly or criminally forfeited ... the Attorney General may—
    (A) retain the property for official use, or ...
    transfer the property ... to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property ...
    21 U.S.C. § 881(e)(1)(A).