**UNITED STATES of America, Plaintiff,**

v.

**THAT CERTAIN REAL PROPERTY LOCATED AT 632–636 NINTH AVENUE, CALERA, ALABAMA, Etc., Defendant.**

**In re Henry FORD, Claimant.**

**Civ. A. No. 91–AR–2035–S.**

United States District Court,
N.D. Alabama, S.D.

March 26, 1992.

Opinion and Pending Motions,
June 2, 1992.

Opinion on Motion to Set Aside
Order, July 6, 1992.

Opinion on Motion for
Summary Judgment, Sept. 3, 1992.

Jack W. Selden, James D. Ingram, U.S. Attys. Office, Birmingham, Ala., for plaintiff.

Jesse P. Evans, III, Richard D. Greer, Najjar Denaburg P.C., Henry L. Penick, Hycall Brooks, III, Penick & Brooks, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION AND ORDER

ACKER, District Judge.

The above-entitled case began as a civil forfeiture action pursuant to 21 U.S.C. § 881(a)(7) (1988), brought by the United States, which filed a complaint containing a lawyer's verification "based on reports and information furnished me by the Shelby Regional Narcotics Task Force and the Drug Enforcement Administration". The complaint was accompanied by the affidavit of an investigator who swore that someone else, namely, an undercover agent, purchased cocaine from individuals located on the real property identified as 632–636 Ninth Avenue, Calera, Alabama, the alleged residence of one Albert Lee Oden. This affidavit also stated that there is both a yellow block house and a mobile home located on the said property. On August 29, 1991, based on the papers submitted, this court ordered the issuance of a warrant for the arrest of the said real property and for the publication of the notice required by Rule C(4) of the Supplemental Rules of Certain Admiralty and Maritime Claims.

There was neither a pre-seizure notice given to any occupant nor any pre-seizure hearing conducted. Instead, on August 30, 1991, the court ordered that all occupants of the real property be dispossessed forthwith unless they could show cause in writing within seven (7) days after service of the order upon some occupant why the order should not be granted. On September 4, 1991, the United States Marshal served on Thomas Gentry, Brenda Marsh, Monica Marsh and Henrietta Nelms at 632 Ninth Avenue, Calera, Alabama, copies of the complaint, the notice, the motion to vacate and the order to show cause. None of these persons was listed as a potential claimant to the property. Henry Ford was served with the same papers at another location on September 5, 1991. On September 17, 1991, this court entered an order granting the motion to vacate and ordered the United States Marshal to evict any and all occupants of the property, an order which apparently was unnecessary, the premises being found vacant.

In the original forfeiture complaint the United States had named as "possible claimants" Clarence Victor, Fannie Mae Oden Victor, Albert Lee Oden, and Henry Ford. On September 20, 1991, Ford filed what he styled an "answer" to the complaint. In response to an order to show cause why the said "answer" should not be stricken, Ford filed a motion for leave to file a belated claim, but this court, agreeing with the United States that Ford had failed to file a timely verified "claim" in compliance with Rule C(6) of the Supplemental Rules of Certain Admiralty and Maritime Claims, struck the "answer" and refused to allow Ford's belated claim. On November 27, 1991, after no further pleadings had been filed, the court set the matter for an evidentiary hearing on December 18, 1991, in order to give the United States its opportunity to prove by a preponderance of the

evidence the actual existence of probable cause for believing that the property had been used for the dispensing of a controlled substance. The court therein requested the United States to state the extent to which it agreed with *United States v. Two Parcels of Property Located at 185 and 191 Whalley Avenue, New Haven, Connecticut,* 774 F.Supp. 87 (D.Conn.1991). On December 6, 1991, the United States filed a motion for summary judgment, whereupon the court entered its standard Rule 56 submission order and cancelled the December 18, 1991, evidentiary hearing.

Feeling somewhat foolish at having expressed in its Rule 56 submission order any expectation that it would receive a response from an inanimate parcel of real property to a motion for summary judgment, this court, on December 20, 1991, appointed counsel for the said real property *in rem.* On December 24, 1991, the said real property, by and through its counsel, filed a motion to amend or suspend the submission order. The said motion was granted by an order which extended the submission date to January 31, 1992.

The court now has for consideration the United States' motion for summary judgment which seeks a final order of forfeiture. The court also has before it a motion filed by the real property seeking to vacate the original order of seizure and arrest.

There is no doubt that this is a civil proceeding, ostensibly governed by the Federal Rules of Civil Procedure, which, of course, include Rule 56. This court, nevertheless, seriously doubts that Rule 56, which was adopted long before 21 U.S.C. § 881(a)(7), was designed for, or ever was expected to deal with, an *in rem* forfeiture proceeding in which the defendant is a *pro se* parcel of vacant real property.

The Eleventh Circuit explained the purpose and function of Rule 56 in *Burns v. Gadsden State Community College,* 908 F.2d 1512, 1516 (11th Cir.1990), as follows:

Recognizing the importance of giving the nonmovant a meaningful opportunity to respond to a motion for summary judgment, this circuit has strictly enforced the requirement of a 10 day advance notice that the court will take a motion for summary judgment under advisement as of a certain date. *E.g., Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir.1985) (holding that when a court *sua sponte* converts a motion to dismiss into a motion for summary judgment, the court must give at least 10 days notice to the nonmovant). The reasons for such a requirement "are premised on the fact that disposition of a case on summary judgment grounds represents a final adjudication on the merits. It forecloses subsequent litigation on the matter; it is accordingly important that proper notice be given so as to insure 'opportunity to present every factual and legal argument available.'" *Griffith,* 772 F.2d at 825 n. 4 (citing *Finn v. Gunter,* 722 F.2d 711, 713 (11th Cir.1984)).

After learning from *Burns,* this court, and other federal courts, have redrafted their previously employed Rule 56 submission orders in order to assure the non-moving party a meaningful opportunity to challenge a Rule 56 motion. But giving an unoccupied yellow house and mobile home a meaningful opportunity to challenge a motion for summary judgment is not so easy. As they should, courts take especial care to look out for the rights of *pro se* litigants. This court sees no reason to make an exception to this general rule for a *pro se* parcel of real property, particularly when the rule of lenity in quasi-criminal matters, such as this, is applied and where the basic principles of "due process" are implicated. It is for this reason that this court appointed counsel for the property itself after the only individual putative claimant who apparently has legal title tried to assert a claim but may have failed to satisfy technical procedural requirements. Perhaps in an exercise of whatever discretion this court had, it should have allowed Ford to file his belated claim. Ford did subsequently file a separate purported action in this court against the United States, CV 92–AR–500–S, a case which has now been consolidated with this case in order to avoid duplication of judicial effort.

In a memorandum filed on December 23, 1991, the United States said, *inter alia:*

The government acknowledges that the holding in *Whalley Avenue* follows the legal precedence of the Second Circuit, as established in *United States v. The Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258 (2d Cir.1989), amended and rehearing denied, 897 F.2d 659 (2d Cir.1990), and in *United States v. 141st Street Corporation,* 911 F.2d 870 (2d Cir.1990). The undersigned assistant United States attorney has learned from the assistant U.S. attorney who handled *Whalley Avenue* that this decision will not be appealed for that reason. However, it remains the position of the Department of Justice that the Second Circuit's analysis in *Livonia Road* is wrong, and whatever value the *Whalley Avenue* decision may have is limited solely to that circuit.

This court is not satisfied either that the controlling law is entirely clear or that the material facts in this case are without dispute. This court will be required to make findings of fact after a trial on the merits. Significantly, the United States filed no evidentiary response to the real property's evidence submitted in opposition to the Rule 56 motion. At a trial, the court will necessarily explore and determine not only "probable cause" but the validity of the initial seizure. The disputed questions of law must await or accompany the outcome of a resolution of the disputed questions of fact.

The court will entertain a motion by either side pursuant to Rule 39(b), F.R.Civ. P., if filed within ten (10) days, for a jury to decide the factual issues.

Pursuant to Rule 16(b), F.R.Civ.P., all discovery shall be completed within ninety (90) days from this date. The case is hereby SET for pre-trial conference on June 19, 1992, at 1:30 P.M., in accordance with the enclosed pre-trial instructions.

The motion of the United States for summary judgment is DENIED. The motion of the property will be ruled upon at trial.

## ON PENDING MOTIONS

On May 14, 1992, this court heard oral argument on a number of motions pending in the above-entitled proceeding. This opinion will endeavor not to repeat matters discussed in the opinion and order of March 26, 1992, although some repetition will be necessary. The unruled-upon motions here under consideration, in the order of their filing, are:

1. Motion filed on January 21, 1992, by the subject real property itself, located at 632–636 Ninth Avenue, Calera, Alabama, to vacate the order of its arrest and seizure. This motion has been orally joined in by claimant, Henry Ford.

2. Motion filed on April 1, 1992, by the said real property for trial by jury. This motion has also orally been joined in by claimant.

3. Motion filed on May 6, 1992, by plaintiff, United States, to dismiss the real property as a party and for other relief.

4. Motions filed on May 8, 1992, and May 14, 1992, by claimant Ford for sanctions against plaintiff, including the sanction of dismissal of the proceeding.

■ This court could easily dispose of this case by gratefully granting the strange motion filed by the United States on May 6, 1992, seeking to dismiss the defendant real property here sought to be forfeited *in rem.* That motion says, *inter alia:*

Comes now the United States of America, by and through counsel, Jack W. Selden, United States Attorney for the Northern District of Alabama, and James D. Ingram, Assistant United States Attorney for this district, and moves this court to dismiss the defendant real property, as more particularly identified in the government's *in rem* complaint, as a party in the above-entitled forfeiture action, *United States v. Real Property Located at 632–636 Ninth Avenue, Calera, Alabama, et al.,* CV 91–AR–2035–S.

As grounds therefor, plaintiff states as follows:

\*  \*  \*  \*  \*  \*

6. The dismissal of the defendant real property as a party to the civil forfeiture action will promote judicial economy, and will not prejudice the interests of any other party herein.

This court has been under the impression that the whole purpose of this proceeding was to wrest title of this property from any and all others who claim it and vest that title in the United States. The only party who could possibly be prejudiced by a dismissal of the real property would be the United States itself. During oral argument, this court was able to convince the United States that it did not really want what it was asking for, because to grant its motion would be to dismiss its case. A drug forfeiture action must, by definition, have property as an *in rem* defendant. By diligent inquiry during oral argument the court was able to ascertain that what the United States really wanted was for the court to discharge the attorney appointed by the court to represent the real property. Although this court agrees that the appointment of counsel here was unusual, the circumstances were unusual, and the court has the inherent power to appoint counsel for any *pro se* party, including real property, if the attorney is willing to accept the appointment. The court will do the United States a favor and will deny its unintended motion to dismiss the only real property it seeks to have forfeited in this proceeding. It will also deny the United States' motion insofar as it seeks to have appointed counsel for the real property discharged.

The belated claimant's motion for a jury trial is not resisted by the United States, perhaps because the Seventh Amendment was recognized as controlling in this type of proceeding in *United States v. Real Property Located at 2101 etc. Maple Street,* 750 F.Supp. 817 (E.D.Mich.1990). Exercising the discretion given by Rule 39(b), F.R.Civ.P., the request for trial by jury is GRANTED, insofar as Ford's claim is concerned, if and when there is a trial of the issues presented by that claim. The issue of "probable cause" is for the court.

In Ford's several motions, he complains that the Government's responses to his discovery requests are woefully inadequate and do not comply with this court's direct and unequivocal compulsion order. As the court addresses the question presented by Ford's motions, it keeps in mind that no party in this proceeding has requested a stay of discovery or, for that matter, a delay in the ultimate trial of the case, even though, for aught appearing, there is an ongoing criminal investigation or prosecution of persons other than Ford for cocaine dealing upon the subject real property. Therefore, the stay of discovery which would have been automatically available and granted if asked for pursuant to *United States v. Premises Located at Route 13,* 946 F.2d 749 (11th Cir.1991), does not interfere with the scheduling order entered on March 26, 1992, pursuant to Rule 16(b), F.R.Civ.P. That order requires that all discovery be completed within ninety (90) days and sets the case for final pre-trial conference on June 19, 1992.

Ford's first discovery requests and the Government's disputed responses are:

### INTERROGATORY

1. (a) State each fact you allege Henry Ford had knowledge of regarding illegal activity occurring on the property in question.

### ANSWER

(a) Unknown at this time as discovery is presently ongoing.

### INTERROGATORY

1. (b) State when Henry Ford acquired knowledge of the facts noted in (a).

### ANSWER

(b) Unknown at this time as discovery is present ongoing.

### INTERROGATORY

1. (c) State how Henry Ford acquired knowledge of the facts noted in (a).

ANSWER

(c) Unknown at this time as discovery is presently ongoing.

INTERROGATORY

1. (d) State the name and address of each person who informed Henry Ford of the facts noted in (a).

ANSWER

(d) Unknown at this time as discovery is presently ongoing.

INTERROGATORY

2. (a) State each illegal act Henry Ford gave his consent [sic] which occurred on the property in question.

ANSWER

(a) Unknown at this time as discovery is presently ongoing.

INTERROGATORY

2. (b) State when Henry Ford gave consent to the acts noted in (a).

ANSWER

(b) Unknown at this time as discovery is presently ongoing.

INTERROGATORY

2. (c) State the name and address of each person whom Henry Ford gave such consent to the acts noted in (a).

ANSWER

(c) Unknown at this time as discovery is presently ongoing.

This court expresses the view that the Government has been sloppy in conducting its forfeiture business in this case by instituting a forfeiture proceeding against a parcel of real property admittedly owned "of record" in fee simple by Ford, and by no one else, from July 19, 1982, to the present, and on which Ford does not reside, without having previously acquired any evidence to indicate Ford's knowledge of or consent to the drug activity which the Government says took place on his property. Although there is no statutory requirement for such a pre-proceeding investigation, because the drug forfeiture statute places the burden of proof on the claimant once the Government meets its relatively simple burden of implicating the property itself by demonstrating "probable cause" to believe that drug activity has taken place on it, the Government would nevertheless have done well to do a little bit of investigation into a factual issue that it was almost sure to face. The Government openly admits that it still does not know any facts implicating Ford himself. In the Government's first responses, Ford has no legitimate complaint of evasion. Plaintiff cannot and must not say it knows something it does not know. The Government, if it chooses, can simply wait to see what evidence Ford can present to prove that he had no knowledge of and/or did not consent to the alleged cocaine business conducted on his property.

▇ Although Ford also complains about the fact that the interrogatory answers are signed only by an Assistant U.S. Attorney not on personal knowledge, the fact that the answers indicate a total absence of any information in the hands of the Government satisfies any verification requirement. "Zero knowledge" of a party can be testified to even by its lawyer. "Zero knowledge" constitutes a representation of that fact under the stringent obligations placed upon an attorney by Rule 11, F.R.Civ.P.

▇ With respect to Ford's second discovery requests seeking to elicit the Government's evidence about the drug activity on the property, the situation is entirely different. Affirmative answers to interrogatories are required to be verified by a person or persons who have actual knowledge of the facts stated therein. 28 U.S.C. § 1746 (Supp.1992). The Government's responses to Ford's second set of interrogatories and requests for production, dealing with the alleged drug activity which took place on Ford's real property, are so incomplete and so lacking in detail as to cast serious doubt on the existence of "probable

cause" at the time this proceeding was instituted. More importantly, the answer to Ford's second interrogatories bear only the following purported verification:

I declare under penalty of perjury that the foregoing, based *in part on information supplied by others*, is true and correct.

/s/ James D. Ingram
Assistant United States Attorney

(emphasis supplied). What parts of these answers were supplied by others is left unsaid. In all probability, inasmuch as Ingram is neither a DEA agent, nor an FBI agent, nor a Calera policeman, virtually all of plaintiff's purported "answers" are secondhand. Ingram's verification does not comply with 28 U.S.C. § 1746 (Supp.1992), and therefore the purported responses to the second set of interrogatories and requests do not comply with this court's order expressly requiring plaintiff to "fully respond to Ford's discovery requests within seven (7) days *upon penalty of dismissal* ". Order of April 28, 1992. (emphasis supplied). The United States did not request an extension of time within which to respond fully to Ford's discovery requests, and yet its improperly verified and incomplete responses to several serious and pertinent inquiries by Ford evidence an absence of knowledge of facts clearly relevant to the alleged drug activity on Ford's property. These purported answers are due to be stricken, and plaintiff is due to be sanctioned appropriately for violating this court's order of April 28, 1992. What the sanction or sanctions should or will be may be rendered academic by the court's subsequent discussion of the motion to vacate the order of seizure, the court's action on that motion, and the responses of the parties to that action.

■ The United States denies that the defendant property has any standing to file any pleading in its defense. It would be a serious anomaly for the named *in rem* target of a forfeiture proceeding not to be able to say anything. It is not required to roll over and play dead jurisprudentially just because it is inanimate. The Government asserts that the title to an undefend-

ed piece of real property can be routinely vested in the United States by court order based on hearsay testimony offered by the Government upon constructive notice. Assuming the Government is correct in this assertion, Ford, as claimant, has adopted the motion filed by the property on January 31, 1992. He, too, challenges the arrest and seizure which took place without a pre-seizure hearing and based only on a hearsay verification of the alleged "probable cause" facts. The court has no doubt about its jurisdiction to consider the joint challenge by the property and by its record titleholder to the constitutionality of the seizure process as it was here conducted.

■ As pointed out in this court's opinion of March 26, 1992, the Government in its brief filed on December 23, 1991, said:

The Government acknowledges that the holding in *Whalley Avenue* follows the legal precedents of the Second Circuit, as established in *United States v. The Premises and Real Property at 4492 South Livonia Road*, 889 F.2d 1258 (2d Cir.1989), amended and rehearing denied, 897 F.2d 659 (2d Cir.1990), and in *United States v. 141st Street Corporation*, 911 F.2d 870 (2d Cir.1990). The undersigned assistant United States attorney has learned from the assistant U.S. attorney who handled *Whalley Avenue* that this decision will not be appealed for that reason. However, it remains the position of the Department of Justice that the Second Circuit's analysis in *Livonia Road* is wrong, and whatever value the *Whalley Avenue* decision may have is limited solely to that circuit.

Since that time, the same Assistant United States Attorney who appears for the Government in this case filed a motion on April 11, 1992, in another drug forfeiture case pending before this court, CV 92–AR–0902–E. That motion simply repeats what the original motion for warrant of arrest in the instant case alleged on August 29, 1991, namely:

Pursuant to the decision of the Eleventh Circuit in *United States v. $38,000*, 816 F.2d 1538, it may be required that a judicial determination of probable cause

be made prior to the issuance of a warrant under Supplemental Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

This court disagrees with what the Government said on December 23, 1991, and agrees with what it said on April 11, 1992, and on August 29, 1991. The predominant reason for this court's conclusion in this regard is not the persuasiveness of *Whalley Avenue* or of *Livonia Road* but the binding effect of *Jones v. Preuit & Mauldin*, 808 F.2d 1435 (11th Cir.1987) (vacated on other grounds), in which the Eleventh Circuit said:

> [I]n an unpublished opinion issued six months prior to the attachment by P & M, the Alabama attachment statute at issue here had been declared unconstitutional, the court stating that the statute's unconstitutionality was obvious. *Wiggins v. Roberts*, No. 75–M–1760, slip op. (N.D.Ala.1978). Even assuming *arguendo* that private defendants cannot reasonably be held accountable for unpublished opinions, *Wiggins* nonetheless indicates that the defendants should have known on the basis of [*North Georgia Finishing, Inc. v.*] *Di–Chem* [*Inc.*, 419 U.S. 601, 605–08, 95 S.Ct. 719, 721–23, 42 L.Ed.2d 751] [(1975)], *Fuentes v. Shevin*, 407 U.S. 67, 80–93, 92 S.Ct. 1983, 1994–2000, 32 L.Ed.2d 556] [(1972)], and *Sniadach* [*v. Family Finance Corporation of Bay View*, 395 U.S. 337, 338–42, 89 S.Ct. 1820, 1821–23, 23 L.Ed.2d 349] [(1969)] that an attachment without notice was unconstitutional.

*Id.* at 1442. In *Preuit & Mauldin*, the Eleventh Circuit employed the same line of cases used by the Second Circuit and the district court in *Livonia Road* and *Whalley Avenue*, respectively, to find unconstitutional the Alabama procedures that allowed attachment without a pre-deprivation hearing. The same civil forfeiture procedures were employed in *Whalley Avenue* and in the instant case, namely, 21 U.S.C. § 881(a)(7). They are the fraternal, if not the identical, twin of Alabama's unconstitutional attachment statutes.

This court is also impressed by what the Eleventh Circuit said in *United States v. Kramer*, 912 F.2d 1257 (11th Cir.1990), in which it held, in a RICO forfeiture proceeding, that "a district court cannot allow restraints on forfeited property to continue *ad infinitum* without imposing on the Government the burden to make a preliminary showing of their continued necessity". *Id.* at 1261. This expression is consistent with footnote one in *$38,000*, which obviously worries the United States when the Eleventh Circuit says that Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims is constitutional in its application only in *"exigent circumstances"*. 816 F.2d at 1540 n. 1. (emphasis supplied). The difference between *money* and *real property* in this regard is obvious on its face. There were no "exigent circumstances" to justify a seizure of Ford's real property without a pre-seizure hearing.

A telling recent addendum to the arguments in *Whalley Avenue* and *Livonia Road* comes from the Ninth Circuit in *United States v. James Daniel Property*, 971 F.2d 1376 (9th Cir.1992). There the Ninth Circuit said as recently as April 24, 1992:

> Good's home was seized pursuant to a warrant of arrest issued by a United States magistrate. There was no prior notice or opportunity for the property owner to be heard before the seizure of his home. 21 U.S.C. § 881 does not provide for such a hearing. Good argues that the statute is an unconstitutional violation of due process both on its face and as applied. The government cites a phalanx of Ninth Circuit opinions that uniformly support the proposition that items subject to forfeiture may be seized without prior judicial review. *See United States v. One 1985 Cadillac Seville*, 866 F.2d 1142 (9th Cir.1989); *United States v. One 1971 BMW 4–Door Sedan*, 652 F.2d 817 (9th Cir.1981); *United States v. One 1972 Mercedes Benz*, 545 F.2d 1233 (9th Cir.1976); *United States v. Tax Lot 1500*, 861 F.2d 232 (9th Cir. 1988), *cert. denied,* 493 U.S. 954, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989).

All of these cases, save one, have one thing in common: the seized property can be driven away and could find itself in another jurisdiction by sundown. The exception is *Tax Lot 1500*, which involved the forfeiture of real property. The government urges us to rest our decision on this case. The problem with *Tax Lot 1500*, however, is that it was argued and submitted as an eighth amendment case, not as a due process case. Neither the due process arguments nor the record before the court were sufficiently developed to support the broad proposition cited by the government that the absence of a pre-seizure hearing can never raise constitutional questions, even when real property is being forfeited. *Tax Lot 1500* specifically reserved the issue of a potential facial challenge to § 881 and confined its holding to the statute as applied. The court found that the process afforded "sufficiently cured any possible constitutional defect" in that case. *See* 861 F.2d at 236. *Tax Lot 1500* does not provide a general framework for analyzing the due process implications of forfeiting real property and is of little help in resolving the issue in the present case. For guidance, we turn to the Supreme Court's decisions in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). *Mathews v. Eldridge* identifies a number of factors that should be considered in determining whether or not there has been a violation of due process. Courts are instructed to consider the significance of the property interest at stake, the risk of erroneous deprivations given the procedures actually used, as well as the probable value of additional procedural safeguards, and, finally, the government's interest in pre-notice seizure. 424 U.S. at 335 [96 S.Ct. at 903].

*Fuentes* teaches that due process requires notice and an opportunity to be heard prior to the deprivation of a property interest. 407 U.S. at 80–82, 92 S.Ct. at 1994–95. Exceptions to this rule are warranted only in "extraordinary situations." The second of three defining characteristics of such an extraordinary situation is when there is "a special need for very prompt action." 407 U.S. at 91, 92 S.Ct. at 2000.

*Calero–Toledo* applied the *Fuentes* criteria to civil forfeitures holding that an exception to the general rule of notice and an opportunity to be heard is warranted when the property being forfeited is a yacht. Central to the Court's analysis was the fact that the property in question was personal property and that it was movable. "[T]he property seized—as here, a yacht—will often be the sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." 416 U.S. at 679, 94 S.Ct. at 2090. This case has been relied upon to establish the general proposition that due process does not require government officials to conduct hearings before seizing items of personal property that are subject to forfeiture.

*Calero–Toledo*, however, was decided before 21 U.S.C. § 881(a)(7) was adopted in 1984. Section 881(a)(7) made real property subject to civil forfeiture for the first time. We find that, for the purposes of due process analysis, real property is distinct from personal property. One of the unique aspects about a piece of land is that it cannot be easily moved, eliminating the *Fuentes* requirement for "very prompt action." The forfeiture of a person's home also has implications for the balance in *Mathews v. Eldridge*. People have a particularly strong interest in their homes, and the government has a less significant interest in seeking forfeiture prior to giving notice and an opportunity to be heard. The home will be there when the government decides to initiate forfeiture proceedings. The home will be there when the government delivers notice of its intent. Finally, the home will still be there for seizure if the government is successful on the merits of its action. These factors shift the balance struck in *Cale-*

*ro–Toledo* and in most instances will militate in favor of requiring a pre-seizure hearing before an individual's home can be taken.

The Second Circuit has grappled with the difficult issues raised by the seizure of a house. *See United States v. Property at 4492 S. Livonia Rd.*, 889 F.2d 1258 (2d Cir.1989). In a well-reasoned opinion the court examined the factors identified in *Mathews v. Eldridge* and concluded that "under all the circumstances there were no exigent circumstances justifying the seizure of [the individual's] home when the forfeiture action was started." 889 F.2d at 1265. The court held that due process required the provision of a pre-seizure hearing. The Eleventh Circuit, in a cursory treatment of the question, has come to the opposite conclusion. *See United States v. A Single Family Residence*, 803 F.2d 625, 632 (11th Cir.1986). We find the Second Circuit's analysis persuasive and reach a similar result.

Good has a substantial and unique interest in his home. The government's interest in avoiding a pre-seizure hearing is not significant in this case. The house is not going anywhere. It is not going to be "removed to another jurisdiction, destroyed or concealed." *Calero–Toledo*, 416 U.S. at 679, 94 S.Ct. at 2090. Any legitimate interest the Government has may be protected through means less restrictive than seizure. "Any exigency that might be posed by threat of an encumbrance on, or transfer of, the property may be met by less restrictive means than seizure, for example, by the filing of a *lis pendens* ... along with a restraining order or a bond requirement." *Livonia Road*, 889 F.2d at 1265.

In its effort to retreat from its repeated expression of anxiety over *$38,000*, and in order to try to put the Eleventh Circuit on its side, the Government has cited *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir.1991), instead of *United States v. A Single Family Residence*, 803 F.2d 625 (11th Cir.1986), the case referred to by the Ninth Circuit in *James Daniel Property*. From this court's

reading of *A Single Family Residence* and of *Four Parcels*, neither case stands for the proposition that an *ex parte* seizure of *real property*, without "exigent circumstances" justifying its pre-hearing seizure, can take place without a pre-seizure notice to the property owner and an opportunity to be heard on the issue of "probable cause." As the Ninth Circuit so well pointed out, real property can't jump up and move away. Yet, in *Preuit & Mauldin*, the Eleventh Circuit found that even *personal* property, which *can* jump up and move away, cannot be routinely attached without a pre-seizure hearing. To take such property thusly constitutes a violation of "due process".

By separate order, the court will grant the property's and Ford's joint motion to vacate the order of seizure and will deny plaintiff's motion to dismiss. The court declines to pre-judge any amendment to be filed by the Government if it chooses to amend so as to request the court to set the matter for the required pre-seizure hearing on the issue of "probable cause".

Appropriate separate orders will be entered.

## ON MOTION TO SET ASIDE ORDER VACATING ARREST AND SEIZURE

A motion filed on June 24, 1992, by the United States of America seeks to set aside that portion of the order entered by this court on June 2, 1992, which vacated the arrest and seizure of the subject real property. This new motion is now under submission.

■ A final pre-trial conference was held in the above-entitled cause on June 19, 1992. The pre-trial order, *inter alia*, recites that "subject matter jurisdiction exists under 28 U.S.C. §§ 1345 and 1355" but also states that "plaintiff contends that the court now lacks *in rem* jurisdiction over the defendant *res* to conduct further proceedings". Plaintiff's accompanying memorandum brief puts forward two arguments: (1) that the law of the Eleventh Circuit finds no "due process" problem

with an *ex parte* court order for the arrest and seizure of real property if a reasonable basis is demonstrated for believing that it has been used to facilitate the distribution of drugs; and (2) without an actual arrest and seizure the court has no jurisdiction, so that by having vacated the order of arrest and seizure this court has divested itself of jurisdiction. The court is tempted to agree with plaintiff's second contention that the statutory scheme here employed by plaintiff triggers federal court jurisdiction only if the court can be persuaded at an *ex parte* presentation of affidavits suggesting that drug activity has occurred on the real property sought to be forfeited, and if, as a result of the said *ex parte* consideration, an arrest and seizure is ordered and actually accomplished. If plaintiff's contention is correct, the increasing number of judges like Chief Judge Julian Abele Cook, Jr., in *U.S. v. A Leasehold Interest in Property Located at 850 S. Maple, Ann Arbor, Mich.*, 743 F.Supp. 505 (E.D.Mich.1990), who held that a pre-seizure notice and hearing is required before real property can be constitutionally seized, would automatically decline jurisdiction when they refuse to enter the routinely requested *ex parte* seizure order, and perhaps would instead be holding, by implication, the entire federal drug forfeiture scheme unconstitutional. This court respectfully refuses to accept the invitation to hold that it lacks jurisdiction in this case unless it reinstates the *ex parte* order of seizure. Plaintiff's motion is, in effect, a motion to dismiss its own action without prejudice. To grant it would provide a good vehicle for obtaining a ruling by the Eleventh Circuit on an interesting jurisdictional and/or constitutional question but would unduly delay the resolution of a title problem.

More and more courts are voicing frustration at what appears to be overreaching by the United States in the drug war, particularly in forfeiture cases where law enforcement agencies have a "built-in" conflict-of-interest because they share in the product of the seizure. A good example is *U.S. v. One Parcel of Property Located at 508 Depot Street*, 964 F.2d 814 (8th Cir. 1992). There the Eighth Circuit was obviously unhappy at having to forfeit the defendant property and called upon Congress to inject "a modicum of fairness" into its forfeiture scheme. *Id.* at 817. The United States has pending in the Supreme Court a petition for certiorari seeking to review the Third Circuit's *U.S. v. A Parcel of Land, Buildings, Appurtenances and Improvements, Known as 92 Buena Vista Avenue, Rumson, New Jersey and Beth Ann Goodwin*, 937 F.2d 98 (3rd Cir.1991). The said petition finds fault with the Third Circuit for holding that an innocent owner of real property who bought the property with money given to her as a gift, but derived by the donor from drug trafficking, should be allowed to keep the property because of her personal innocence. Although this court agrees with the Government that the Third Circuit was wrong in *Buena Vista Avenue*, the case illustrates the length to which the United States is willing to take the forfeiture concept. Another judge of this court, in *U.S. v. Real Property Located at 110 Collier Drive, Albertville, Alabama*, 793 F.Supp. 1048 (N.D.Ala.1992), recently wrote a scathing opinion pointing out the super-aggressive arrogance of the government agents who there undertook to forfeit the property of citizens.

Although the United States is correct in citing Eleventh Circuit cases which seem to indicate that an *ex parte* seizure based on a forfeiture complaint verified on oath is permissible, this court does not assume that the Eleventh Circuit is fully "on board" with the proposition that the war on drugs makes the government immune from the Fifth Amendment's "due process" requirements. This is obviously the reason that the United States *conceded* in its own original application in this case, by referring to *U.S. v. $38,000*, 816 F.2d 1538 (11th Cir. 1987), that "it may be required that a judicial determination of probable cause be made prior to the issuance of a warrant". It would have created an interesting situation if this court had agreed with the United States at that moment and had required a pre-seizure hearing. Would this court have been denying jurisdiction as the United States now argues? More importantly,

the Eleventh Circuit, which has never been called upon to distinguish between real property and personal property in the application of the "exigent circumstances" idea to these two very different kinds of property, has given mixed signals picked up by the United States and reflected in its original petition.

The Supreme Court has recently decided *Wyatt v. Cole*, —— U.S. ——, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Although *Wyatt* did not deal specifically with the federal forfeiture statutes, it pretty clearly expressed the Supreme Court's agreement with the Eleventh Circuit's finding in *Jones v. Preuit & Mauldin*, 808 F.2d 1435 (11th Cir.1987), that a pre-seizure hearing before the arrest of real property is required in order to comply with "due process". In *Wyatt*, the court said at —— U.S. at ——, 112 S.Ct. at 1829:

> ... Mississippi law provided that an individual could obtain a court order for seizure of property possessed by another by posting a bond and swearing to a state court that the applicant was entitled to that property, and that the adversary "wrongfully took and detain[ed] or wrongfully detain[ed]" the property. 1975 Miss.Gen.Laws, ch. 508, § 1. The statute gave the judge no discretion to deny a writ of replevin.
>
> \*  \*  \*  \*  \*  \*
>
> The District Court held that the statute's failure to afford judges discretion to deny writs of replevin violated due process. 710 F.Supp. 180, 183 (S.D.Miss. 1989).[1]

[1] The State amended the statute in 1990. Miss.Code Ann. § 11–37–101 (Supp.1991).

This description of the Mississippi statute and of its unconstitutionality sounds exactly like what the Eleventh Circuit said about the Alabama statute declared unconstitutional in *Preuit & Mauldin, and like the drug forfeiture statute as the United States wants it to be interpreted here*. At least in Mississippi and in Alabama the unconstitutional attachment statutes required the posting of a bond before seizure, whereas the United States not only does not have to post a bond but will be immune

from any action for a wrongful seizure. Where such immunity exists, there is even more reason for insisting upon the observance of the Fifth Amendment's constraints. The foregoing discussion is probably academic, because the issue raised by plaintiff's motion will become moot if and when the United States meets its burden of demonstrating probable cause for the seizure. The real property and Ford, the claimant, have submitted themselves fully to the jurisdiction of the court and do not deny jurisdiction. In fact, they have now expressly waived a pre-seizure hearing. If the United States succeeds in demonstrating probable cause, as it would have had to do in an adversarial setting even if the *ex parte* seizure and arrest had not been set aside, it has lost nothing, because the defendant property and its claimant would be estopped to deny jurisdiction.

On the basis of the foregoing, plaintiff's motion will be denied.

## ON MOTION FOR SUMMARY JUDGMENT

In the above-entitled proceeding, plaintiff, United States of America, seeks to have forfeited to it certain real property located in Calera, Alabama. The complaint, filed on August 29, 1991, invoked 21 U.S.C. § 881(a)(7) (1988), alleged that the property was used for the distribution of cocaine, and named Henry Ford and three others as possible claimants to the property. The case has thereafter enjoyed a somewhat checkered career. The court will not recapitulate the year-long proceedings except to the extent certain procedural events may be relevant at this point.

Ford filed his claim together with discovery requests seeking to ascertain what, if any, information the United States had regarding his personal culpability or knowledge of alleged cocaine activity on his Calera property. The property itself filed a motion to vacate the order of seizure, contending that a prehearing seizure of real property violates "due process". The United States insisted that this court would be without jurisdiction unless it maintained its *ex parte* order of seizure. This court disa-

greed with the United States on this and still does. *See* the memorandum opinions of March 26, June 2 and July 6, 1992. This disagreement has now become academic because both Ford and his real property have formally waived any pre-seizure hearing on the issue of "probable cause" and, in fact, have conceded the existence of "probable cause". For what it is worth, this court notes that since this court's earlier comments on the "due process" issue inherent in a seizure of *real* property before an adversarial hearing on "probable cause", one court has expressed concern over the Government's increasing and virtually unchecked use of the civil forfeiture statutes and held that a district court's approving *ex parte* a pre-notice seizure was erroneous, even though in that case the seized assets were personalty. *U.S. v. All Assets of Statewide Auto Parts, Inc.,* 971 F.2d 896 (2d Cir.1992).

On May 6, 1992, the United States filed a strange "Motion to Dismiss the Defendant Real Property as a Party in the Civil Forfeiture Action". It obviously did not mean what it said, and the court did not grant the motion.

On May 7, 1992, the United States responded to Ford's first set of interrogatories designed to elicit what evidence the United States had to prove Ford's knowledge of and/or consent to the use of his real property for a cocaine operation. The answer to each interrogatory was: "Unknown at this time as discovery is presently ongoing". In other words, the United States, as of May 7, 1992, still had no concrete evidence of Ford's knowledge of or consent to the illegal use of his property. It follows, of course, that when the United States began the forfeiture proceeding against Ford's property on August 21, 1991, it had no such evidence.

The court entered a pre-trial order on June 19, 1992, as drafted by the United States. In plaintiff's statement of position it said: *"At this time,* the plaintiff challenges the claim of Henry Ford as an 'innocent owner.'"* (emphasis supplied). The court assumes that the position of the United States has not changed, although the

implication inherent in the words "at this time" is that the United States on June 19, 1992, still had in its possession no admissible evidence to refute Ford's categorical denial of any knowledge of or consent to the illegal activity on his property. In contrast, Ford's "innocence" defense was then a central issue, had been introduced early, and was clearly presented in Ford's statement of position in the pre-trial order. The pre-trial order allowed the parties to proceed with discovery provided it be completed by June 26, 1992. The pre-trial order also set the case for jury trial on July 29, 1992. For good cause, the trial date was thereafter rescheduled for July 23, 1992.

After it became apparent that Ford's timely motion for summary judgment could not come under submission under the schedule required by Rule 56, F.R.Civ.P., until July 27, 1992, four days after the then trial date of July 23, 1992, the court on July 17, 1992, entered an order giving the parties the following options: (1) that the parties agree that Ford's amended motion for summary judgment be taken under submission on July 21, 1992, waiving the time limitations of Rule 56, in which event the court would rule on Ford's motion prior to July 23, 1992; or (2) that Ford withdraw his motion for summary judgment on or before July 21, 1992, in which event the case would proceed to trial on the merits on July 23, 1992; or (3) if neither of the first two options was exercised, the trial would be continued and Ford's motion for summary judgment would be taken under submission under its original submission schedule which granted the United States until 4:30 P.M., July 27, 1992, to file material in opposition to the motion. When neither of the first two options was exercised, the United States at 4:17 P.M. on July 27, 1992, filed two purported affidavits, one by Andrew Bryant and the other by James D. Ingram. At 4:30 P.M. on the same date, Ford's Rule 56 motion came under submission.

In addition to Ford's motion for summary judgment, the court has for consideration the following preliminary motions that bear on that motion:

1. On July 27, 1992, simultaneously with its last-minute filing of the two purported affidavits in opposition to Ford's motion for summary judgment, the United States filed a motion requesting a reopening of discovery. This motion necessarily implied a request for postponement of consideration of Ford's Rule 56 motion.

2. On July 30, 1992, defendant real property filed a motion to strike the purported affidavits of Andrew Bryant and James D. Ingram.

*The Undisputed Facts Relevant to The Defendant Property's Motion to Strike the Last–Minute Affidavits and the United States' Motion to Reopen Discovery*

■ One of the purported affidavits filed by the United States is that of Andrew Bryant, an investigator with the Shelby Regional Narcotics Task Force. He is one of the persons who furnished an affidavit which accompanied the original petition filed on August 29, 1991, for the purpose of demonstrating "probable cause" *ex parte.* The other purported affidavit is by James D. Ingram, the counsel for the United States in this case. Ingram's affidavit consists of a narrative of an interview with Fanny Mae Oden Victor. He attaches Exhibit "A," a proposed affidavit by Ms. Victor, who was named in the original complaint as one of the potential claimants and who is now a prisoner at Julia Tutwiler Prison for Women. It is quickly apparent that Exhibit "A" is neither signed by nor sworn to by Ms. Victor. Ms. Victor's deposition, of course, could have been taken at any time between August 29, 1991, when the original complaint expressly naming her was filed, and June 26, 1992, when discovery was to be completed. In a memorandum submitted on July 27, 1992, the United States attempted the following lame and extraordinary explanation for not having earlier taken Ms. Victor's deposition:

> The plaintiff did not anticipate the need for Fannie Mae Oden Victor's involvement prior to trial until Henry Ford's testimony was given in deposition.

There was never any request by any party, including Ms. Victor, to postpone discovery on the basis of the Fifth Amendment or for any other reason. The United States' dereliction in failing to obtain a deposition from Ms. Victor is impossible to imagine, much less to forgive. Admittedly, Rule 56 should not be invoked until after a reasonable opportunity to complete discovery has been afforded. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That is certainly not the situation in this case. How could the United States really expect Ford in a deposition to repudiate what his earlier affidavit had clearly said? Ingram says that Ms. Victor at the last minute furnished information indicating guilty knowledge by Ford, but that after Ms. Victor contacted her husband she refused to sign her proposed affidavit as drafted by Ingram. Bryant's affidavit relates an alleged conversation he had with the same Ms. Victor, in which she told him about certain activities which had occurred on the subject property and of which she says, or implies, Ford was aware. Both of these so-called "affidavits" are the purest forms of hearsay. If they were to be considered by this court, this court would be recognizing a heretofore unknown avenue for bootstrapping hearsay into evidence for the purpose of opposing or supporting a motion for summary judgment.

If the United States, as it claims, engaged in the wishful thinking that Ford, after swearing in an affidavit that he had no knowledge of illegal activity on his property, would suddenly admit such guilty knowledge of drug activity during a deposition, the United States was one of the most naive litigants of all time. It had a superabundance of both reason and time for obtaining admissible evidence on the question of Ford's guilty knowledge or his innocence. The United States forthrightly admitted in its earlier answers to Ford's first interrogatories that it had no evidence whatsoever on this central issue, and yet it did absolutely nothing to obtain such evidence for the purpose of contradicting Ford's claim of innocence, that is, until Ford's Rule 56 motion, supported by his uncontradicted affidavit and deposition,

was 13 minutes from coming under submission. It then, in effect, confessed its inability to defend the Rule 56 motion by begging this court to reopen discovery and asking that the submission be withdrawn so that the United States can try to do what it has woefully failed to do for nearly a year.

### Conclusions of Law Respecting the Motion to Strike Affidavits and the Request for Reopening Discovery

■ Rule 56(e), F.R.Civ.P., provides that "[s]upporting and opposing affidavits shall be made *on personal knowledge,* shall set forth such facts *as would be admissible in evidence,* and shall show *affirmatively that the affiant is competent to testify to the matters stated therein.*" (emphasis supplied). Exhibit "A" to Ingram's purported affidavit does not come close to meeting the requirements of Rule 56(e) and is due to be stricken. The United States would have this court consider the affidavits based on the proposition that a non-moving party need not "produce evidence in a form that would be admissible at trial ... to avoid summary judgment." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This quotation from *Celotex* is a misappropriation of the language. To be "admissible" any document must be both relevant and competent. A document containing hearsay evidence is not competent. Furthermore, such a document not only does not meet the mandate of Rule 56(e), requiring that an affidavit set forth facts which would be admissible in evidence, but fails to comply with Rule 804(b)(1) of the Federal Rules of Evidence. "Hearsay" is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." Black's Law Dictionary 368 (5th Ed.1983). "Hearsay" is something of which the witness has no personal knowledge. Statements like "she told me" or "he said" automatically constitute hearsay, because they refer to the assertions of someone not subject to cross-examination. When such information is offered for the limited purpose of proving that the statement was made to the witness, that is, if such fact is relevant, it becomes admissible because the "matter" at issue is what was said, to whom, and by whom, and not the truth of what was said. In the instant case there is no relevance to the mere fact that Ms. Victor said something interesting to Ingram or to Bryant. The only purpose for the indirect reference to Ms. Victor's statements is an attempt by the United States to insinuate the truth of what she is alleged to have said. The United States fully understands the dilemma it has created for itself. Simultaneously with filing two flagrantly hearsay affidavits, it asks that the submission of Ford's motion for summary judgment be withdrawn and that discovery be reopened for the purpose of allowing it to do what it failed to do for nearly a year. The government thereby admits that its "affidavits" constitute proof of nothing.

### Undisputed Facts Pertinent to Ford's Rule 56 Motion

■ Ford and his real property now concede that the United States had probable cause to believe that cocaine was dispensed by persons other than Ford operating on or out of Ford's real property in Calera, Alabama. Said property was purchased by Ford in 1982 and has been owned exclusively by him from then until now. He acquired it by warranty deed from Jessie Frank Bishop and Henrietta Bishop, recorded in Deed Book 341 at Page 96 in the Office of the Judge of Probate of Shelby County, Alabama. The Bishops were not named in the original complaint as potential claimants. They have no color of title. Ms. Victor was named as a potential claimant. It is possible that the United States had reason to believe that the mobile home located on the property was owned by Ms. Victor. This could be the only possible reason for listing her except to be sure to include a cocaine dealer among the potential claimants. If persons with no color of title are to be listed as potential claimants, the list could be long. It did include, as well as Ms. Victor, Clarence Victor and Albert Lee Oden, who, for

aught appearing, have no color of title. The property is described as follows:

> The southeast quarter of Block 117, except 66⅔ feet fronting on 9th Avenue extended back 100 feet and being situated in the southwest corner of said southeast quarter of Block 117, according to J.W. Dunstan's map and survey of Calera, Alabama. (This is also known as 632–636 9th Avenue, Calera, Alabama.)

The only basis for Ford's Rule 56 motion is his claim that he is an "innocent owner". Prior to the arrest of one or more cocaine dealers, apparently (but not assuredly) including Ms. Victor, operating out of the property (the event that it would seem precipitated this forfeiture proceeding), Ford, according to his unequivocal affidavit and deposition, knew absolutely nothing about any illegal activity taking place on his property. The mere fact that he permitted one or more of the alleged wrongdoers to occupy the property is not enough. *See U.S. v. One Parcel of Land Located at 7326 Highway 45 North, Three Lakes, Oneida County, Wisconsin,* 965 F.2d 311 (7th Cir.1992); *U.S. v. One Parcel Property Located at 3855 South April Street,* 797 F.Supp. 933, (M.D.Ala.1992); *U.S. v. One Parcel Property Located at 1508 North Decatur Street,* CV 91–H–1529–N, 1992 WL 302919 (M.D.Ala. July 27, 1992); and *U.S. v. Stop Six Center Located at 3340 Stallcup,* 794 F.Supp. 626 (N.D.Tex.1992). These cases, separately and severally, stand for the eminently logical proposition that the mere fact of kinship, friendship, or legitimate business relationship between an owner of real property and its misuser does not make out a *prima facie* case of the owner's non-innocence. Ford lived in Hoover, Alabama. He was employed in Birmingham, Alabama. Prior to being served with the forfeiture papers in this case, it had been a long time since he had even visited his property in Calera. He did not purchase or place on his property the mobile home in which Ms. Victor apparently lived, presumably with his permission, and from which the cocaine activity apparently emanated. This mobile home was owned either by Ms. Victor or by someone other than

Ford. In Ford's deposition the following questions and categorical answers appear:

Q. Mr. Ford, did you ever give your consent to anyone to allow illegal activities to take place on your property?

A. No, I did not.

Q. And at any time did you have knowledge of illegal activities taking place on your property?

A. No, I did not.

From August 29, 1991, when it filed its forfeiture petition, until July 27, 1992, the United States failed to seek out and to submit admissible evidentiary material in opposition to Ford's claim of innocence and to his motion for summary judgment based on that claim. The United States belatedly filed some wishful thinking to contradict Ford's straightforward sworn testimony. The United States has provided no rational, much less satisfactory, explanation for its failure to uncover admissible evidence with which to defend a claim that was as predictable as the sun's coming up. Upon utterly failing to come up with any defense to Ford's Rule 56 motion, the United States asks for more time to try to come up with something. This is too much to ask. If the United States was waiting for a miracle, this court will not furnish it. Although it may not be a statutory requirement that the United States at the time it files such a forfeiture proceeding have probable cause to believe in the culpability of the owner of the real property sought to be forfeited, it would not be a bad idea for the United States in forfeiture cases like this one to have in its possession at least a scintilla of admissible evidence with which to defend the claim of innocence which in all probability will be interposed by the owner. Before putting the owner and the judicial system to the time and expense of such a proceeding, a little homework by the government's investigators and lawyers would do no harm.

### Dispositive Conclusions of Law

Because both Ford and the subject real property have conceded, *arguendo,* that probable cause existed for the forfeiture proceeding, the earlier, thorny procedural

questions involving the constitutionality of a pre-hearing seizure have been obviated. If the United States is correct in its contention that this court cannot acquire jurisdiction in a 21 U.S.C. § 881(a)(7) case without first entering an *ex parte* order for arrest of the defendant real property and having the property actually seized, this court, by consent of the claimant and of the real property, will vacate its order of June 2, 1992, and will reinstate the order entered on August 30, 1991, for arrest of the real property. Although this court thinks that this is unnecessary, doing it does clearly accomplish the elimination of a non-issue. With this done, the court has no lingering doubt about its having jurisdiction pursuant to 21 U.S.C. § 881(a)(7) as was initially asserted by the United States. By setting aside the order which vacated the seizure, this court does not want to be understood as retreating in the least from its position set forth in detail in its earlier opinions in this case that a pre-seizure adversarial hearing is necessary before *real* property can be seized. Using the rationale of *Day v. U.S.*, 931 F.2d 903, an unpublished opinion by the Eleventh Circuit issued on March 27, 1991, the failure of the United States in the instant case to have the slightest proof of culpability by Ford before it sought forfeiture comes close to a Rule 11 violation.[1]

Pursuant to 21 U.S.C. § 881(c), Ford defeats this forfeiture by proving either that

---

1. Prior to the adoption of 11th Cir.R. 36–2, effective April 1, 1991, the unpublished opinions of the Eleventh Circuit constituted binding precedent. This new rule, which eliminates the binding effect of unpublished opinions, does not provide for retroactive effect and therefore is prospective only. This being true, *Day,* which was decided four days before 11th Cir. R. 36–2 became effective, is binding on this court. In *Day* the Eleventh Circuit said, *inter alia:*

> The government correctly asserts that it is well-established that property which has been subject to civil forfeiture is not recoverable by a rule 41(e) motion, but by the filing of a claim in a civil forfeiture action. *United States v. Castro,* 883 F.2d 1018 (11th Cir.1989). Moreover, such a forfeiture proceeding is a civil action, not a criminal one. *United States v. One 1969 Buick Riviera Automobile,* 493 F.2d 553, 554–55 (5th Cir.1974). The government relies heavily upon *Castro* for the proposition that the civil forfeiture action in this case should have proceeded. In *Castro,* the court denied the defendant's 41(e) motion and subsequently the government pursued a civil forfeiture action. In this case, Day filed a 41(e) motion for the return of property, and thereafter the government instituted a civil forfeiture action four days prior to the date set for the 41(e) hearing. As the government asserts, under ordinary circumstances, a civil forfeiture proceeding should be heard before a rule 41 proceeding. Although the government correctly states the law from *Castro,* in this case, it filed the civil forfeiture action without an essential element—reasonable inquiry.[1] A civil forfeiture action constitutes a civil action subject to the rules that govern other civil actions.

> The government failed to differentiate between probable cause for a search warrant and probable cause to forfeit. For forfeiture, the government had to possess evidence that would lead to a reasonable belief that the certificates were the fruits of unlawful activity, i.e., illegal gambling, *before* filing the civil forfeiture action. Rule 11 requires reasonable inquiry before the filing of a complaint. Probable cause to believe a crime has been committed does not necessarily give rise to probable cause to seize and forfeit items. From the record before us, it appears that the government never possessed any evidence that the seized CDs were the product of illegal gambling. More important, it appears, as the district court found, that the government made no attempt to connect the CDs with the unlawful activity. The FBI affidavit may have shown probable cause to believe Day was involved in gambling, but it did not show that the seized CDs were products of illegal gambling activity. The government failed in its proof because it failed to reasonably investigate facts surrounding the acquisition of the CDs.

> If the government had investigated prior to filing the complaint, as was its duty, it would have discovered information Day presented at the hearing. Nothing indicated that the CDs were the products of recent gambling activity. The government offered nothing to refute the testimony and evidence that the CDs were funded or belonged to various members of the Day family.

1 In pertinent part, rule 11 provides:
The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed *after reasonable inquiry* it is well grounded in fact.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction. F.R.Civ.P. 11 [emphasis supplied].

his property was not used in connection with illegal activities or that he was an "innocent owner" of the property. Upon being informed of the facts, Ford has admitted that illegal activity took place on his property. However, he claims not only that he is an "innocent owner" in the sense that he did not know of the illegal activity taking place on his property, but not knowing of it he could not have consented to it. Under Rule 56, Ford has fully met his burden of proving his claim of innocence. According to the only admissible evidence, Ford gave about as much personal attention to his property in Calera while cocaine was being sold there as if he had lived in Honolulu instead of in Hoover.

The Eleventh Circuit has rightfully been tough on drug dealers, but it has not yet held that an owner of real property is obligated to monitor his property 24 hours a day and to snoop constantly to check on its occupants, even trespassers, in order to protect his property from forfeiture in the event someone decides to go into the "crack" dispensing business or to grow marijuana on the property.[2] The non-movant, United States, had an obligation to resist Ford's motion for summary judgment with affirmative evidence. It cannot simply say, as it apparently does, "Judge, a jury may not believe Ford." This is no more than relying on pleading. And even the United States' pleading on the gravamen issue waffles. It is not enough for the United States to *suspect* that Ford knew what was going on. In a court of law the United States, like any other Rule 56 non-movant, must offer something to refute a claimant's claim of innocence. Because the United States neither obtained nor offered such proof in a timely fashion, it has wasted this court's time and brought unnecessary agony and expense upon a property owner.

An appropriate, separate order will be entered.

---

**2.** *See Real Property Forfeitures as a Weapon in the Government's War on Drugs: A Failure to Protect Innocent Ownership Rights,* 72 B.U.L.Rev. 217 (1992).