**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Benjamin Barry KRAMER, et
al., Defendants,**

**M. Dale Lyon, Lyon Children Trust, David C. Pierson, Lois J. Pierson, Julieann Coyne Wasson, Christopher Wasson, Michael Gilbert, Karen Gilbert, Robert Gilbert, Margaret Gilbert, The Michael Gilbert Family Irrevocable Trust, and The Robert Gilbert Family Irrevocable Trust, Claimants–Appellants.**

**No. 90–5431.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 7, 1990.

Steven E.M. Hartz, Miami, Fla., Richard Marmaro, Los Angeles, Cal., for Lyon, Lyon Child.

Robert L. Shevin, Miami, Fla., for Pierson & L. Pierson.

Dexter W. Lehtinen, U.S. Atty., Anne M. Hayes, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for U.S.

Richard H. Kirschner, Los Angeles, Cal., for Wasson & Wasson.

Michael S. Pasano, Miami, Fla., William W. Taylor, Jr., Zuckerman, Spaeder, Goldstein, Taylor & Kulker, Washington, D.C., for Gilbert, et al.

Before CLARK and BIRCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CLARK, Circuit Judge:

## MEMORANDUM OPINION

This appeal is being heard on an expedited basis. Oral argument was held on August 27, 1990. To insure no further delay, we issue a memorandum opinion. We conclude that claimants [1] in this forfeiture proceeding were entitled to an evidentiary hearing and order within thirty days of the government's seizure of the property in question. None of the claimants had been convicted pursuant to 18 U.S.C. § 1963(a)

(1988), nor had an indictment been issued against them.

Because no hearing has been conducted, the facts recited by the court are taken from the briefs and do not represent opinions of the court. The court retains jurisdiction of the case.

## I. Background

Appellants bring this appeal from an order of the district court imposing various restraints on their property following an order of forfeiture pursuant to 18 U.S.C. § 1963. Because the background of this case is both intricate and crucial to this court's order, a brief excursion into the factual circumstances is appropriate.

Claimants are general and limited partners of LCP Associates, Ltd. ("LCP") which entered into a joint venture with another entity to build, develop, and manage a card club casino known as the Bell Gardens Bicycle Club ("Club").[2] They have never been indicted or tried for the offenses at issue in the underlying criminal proceeding. The record shows that the Club is a substantial affair with an estimated net value of $150 million, over 2,000 employees, and monthly proceeds to the claimants of over $1 million a month.

---

**1.** Of the twelve appellants, only one party, Michael Gilbert, was a defendant in the underlying criminal action in this case and that status puts him on far separate ground from his fellow appellants for the purposes of this appeal. Therefore, the term "claimant" as used in this Order refers to all appellants with the exception of Michael Gilbert.

**2.** LCP currently holds a 65% ownership interest in the Club. The remaining 35% interest is held by Park Place Associates who are not involved in the present appeal. Specifically, the individual appellants and their respective ownership interests in LCP are as follows:

a) *M. Dale Lyon*—28% owner and general partner of LCP.

b) *The Lyon Children Trust*—2% owner and limited partner of LCP.

c) *David C. Pierson*—30% owner and general partner of LCP.

d) *Lois J. Pierson*—former spouse of David Pierson and owns one-half of his interest in LCP under California community property law.

e) *Julieann Coyne Wasson*—20% owner and limited partner of LCP.

f) *Christopher Wasson*—spouse of Julieann Coyne Wasson and owns one-half of her interest in LCP under California community property law.

g) *Michael Gilbert*—only member of appellants that was a defendant at trial; 6.67% owner and limited partner of LCP.

h) *Karen Gilbert*—spouse of Michael Gilbert and owns one-half of his interest in LCP under California community property law.

i) *Robert Gilbert*—6.67% owner and limited partner of LCP.

j) *Margaret Gilbert*—.8325% owner and limited partner of LCP.

k) *The Michael Gilbert Family Irrevocable Trust*—2.4975% owner and limited partner of LCP.

l) *The Robert Gilbert Family Irrevocable Trust*—3.33% owner and limited partner of LCP.

In December, 1988, a grand jury returned a superseding indictment against four defendants—only one of whom is before this court as an appellant—alleging various violations of the RICO statute, the Travel Act, and the Internal Revenue Code. Specifically, the indictment alleged that these criminal defendants, Benjamin Barry Kramer, Melvyn Kessler, Jack Jerome Kramer, and Michael Gilbert, had engaged in a scheme of laundering money derived from marijuana trafficking by transferring these funds to a sham offshore entity set up by the criminal defendants as a legitimate lending firm. The tainted money would then be available to be loaned to entities in the United States to finance projects, thereby closing the circle on the laundering scheme. On the forfeiture count, the superseding indictment alleged that the criminal defendants held possession of the Club and other property with a cash value of at least $50 million that constituted or derived from the proceeds of racketeering activity and therefore was forfeitable under 18 U.S.C. § 1963(a)(3).

At trial, the portion of the government's case relevant here rested on the theory that approximately $12 million of the initial $22 million used to construct the Club was funded from the illicit gains of criminal defendants' marijuana trafficking laundered through the foreign entity.[3] By the time the Club began operation in November 1984, only one of the defendants, Michael Gilbert, had an ownership interest in the Club. The other criminal defendants, however, did retain their lender's rights of repayment of principal plus interest and a participation in the Club's profits through their offshore entity. In late 1986, the Club refinanced the $12 million loan through a conventional commercial bank and paid off the remaining balance due to the offshore entity.

In late March and early April of 1990, the jury returned guilty verdicts against the criminal defendants on various substantive counts. On April 2 and 3, the jury also returned special verdicts of forfeiture against the Kramers and Michael Gilbert which found that the Club was the proceeds of their racketeering activity. At an impromptu hearing on April 3, the district court entered the government's proposed order for forfeiture, and also seized the Club in its entirety, appointed an interim trustee, and prevented the Club or its owners from distributing profits or transferring their interests. At this hearing, claimants, who were statutorily barred from intervening in the criminal trial, *see* 18 U.S.C. § 1963(i)(1), unsuccessfully registered objections to the proposed order of forfeiture and restraining order.

Prior to or on April 27, all but two claimants filed verified petitions asserting claims to the Club. The remaining claimants filed verified claims after April 27. The claimants also petitioned for relief from or stay of the restraining orders and filed supporting affidavits. At a hearing on April 27, claimants reiterated their previous objections to the forfeiture and restrictions earlier imposed on the Club. The district court, however, maintained the restraining order, pending final resolution of the scope of the forfeiture of the Club in a hearing required under 18 U.S.C. § 1963(*l*).

## II. Discussion

■ We note initially that this court has jurisdiction to hear this appeal under its authority to review the propriety of any injunctive relief. *See* 28 U.S.C. § 1292(a)(1) (1988). Although the restraints were imposed here with a minimum of process, their indeterminate length and the statutory requirement under § 1963(*l*)(4) of a timely hearing indicate that restraining orders issued pursuant to § 1963(e) have all the indicia of a traditional injunction for purposes of appellate review. *See United States v. Gelb*, 826 F.2d 1175, 1176 (2d Cir.1987); *McDougald v. Jenson*, 786 F.2d 1465, 1472 (11th Cir.), *cert. denied*, 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986). Because the district court in this case has not conducted this hearing re-

---

**3.** The loan actually passed from the sham offshore lending firm to the joint venturers through an intermediate entity. It was that middleman who was technically the Club's lender.

quired by the statutory scheme, we have authority to review appellants' claims.

 Under the criminal forfeiture provisions of the RICO statute, a third party, who claims a legal interest in property forfeited under § 1963(a) in a criminal proceeding, has the sole remedy of petitioning the district court for a hearing to adjudicate the validity of his alleged interest in the property. 18 U.S.C. § 1963(*l*). Upon a third party's timely petition for such review, the district court is commanded to hold a hearing within thirty days "to the extent practicable and consistent with the interests of justice." 18 U.S.C. § 1963(*l*)(4). In such hearings, a third party can prevail on his claim to the disputed property if he can show, by a preponderance of the evidence, that his title to the property vested before the commission of the acts leading to forfeiture or that he was a bona fide purchaser of the interest in the property without knowledge of the potential for forfeiture. 18 U.S.C. § 1963(*l*)(6).[4]

Congress, in enacting these provisions for an ancillary hearing, was well aware of the potential hardships inflicted by criminal forfeiture statutes on third parties who must wait until after the government legally seizes an asset before it can test the legitimacy of their own claims. *See* H.R. Rep. No. 1030, 98th Cong., 2d Sess. 207–09 (1984). Motivated by the belief that "third parties are entitled to judicial resolution of their claims," Congress created an "expedited" procedure under § 1963(*l*) by which such claimants could quickly remove the clouds of forfeiture from their title. *Id.* at 208. Thus, courts, in both applying and interpreting this statutory scheme, are obligated to proceed with the sense of reasonable dispatch that was envisioned by Congress.

The dangers and hardships of delay in judicial resolution of such claims are amply illustrated by the present case. By its own terms, criminal forfeiture under § 1963(a) is an *in personam* proceeding against a defendant, intended only to punish him by confiscating the fruits of his own wrongdoing. *Id.* It has no applicability to a third party with a valid claim to such property. However, claimants here, who have never been formally charged and have consistently advocated the authenticity of their interests in the Club, have been divested for several months of control of a valuable asset and the proceeds flowing from it without a single opportunity to challenge the legality or scope of the restraining order or the order of forfeiture. As the Second Circuit has noted in a similar context, "orders directed at third parties are strong medicine and should not be used where measures that are adequate and less burdensome on the third parties are available." *United States v. Regan,* 858 F.2d 115, 121 (2d Cir.1988).

In order to speed resolution of their cases, claimants principally contend that notions of due process require that the government justify the legitimacy of the restraining orders in a hearing with the full panoply of procedural protections required under Fed.R.Civ.P. 65(a). *See Johnson v. United States Dep't of Agriculture,* 734 F.2d 774, 781 (11th Cir.1984). We need not reach this broad suggestion because we hold that the district court erred by not holding a hearing required by § 1963(*l*) within the statutory thirty day period after the filing of claimants' petitions or a reasonable time thereafter.

It is hereby ordered that the district court, within thirty days of the date of this order, shall commence a hearing under § 1963(*l*) to adjudicate the validity of claimants' interests in the Club.[5] It is also ordered that within thirty days of the completion of this hearing and no later than 75 days from the filing of this order, the dis-

---

**4.** The district court on May 23, 1990 denied claimants' motion to hold unconstitutional the portion of § 1963(*l*)(6) that places the burden of proof on third party claimants to forfeited property. The notice of appeal in this case was filed May 8, 1990, the appeal was expedited, and this issue is not before us.

**5.** Because Michael Gilbert is a defendant in this case, this Order has no applicability to him until such time that his appropriate post-trial motions or appeals from the verdicts are resolved.

trict court shall enter an order that will resolve these claims under the standards prescribed by § 1963($l$)(6) and adjust the scope of the order of forfeiture accordingly. In the event of the district court's failure to hold such a hearing or to enter such an order, the order of April 27, 1990 forfeiting the property in controversy to the government and imposing restraints on the Club shall be vacated by this court upon application of either of the parties.[6]

Because full explication of our views at this time would serve to further delay these proceedings, we sketch out only preliminarily the basis for this order. The controlling statute clearly contemplates that following an order for forfeiture, third parties will receive an expedited adjudication of their claims to forfeited property. *See* 18 U.S.C. § 1963($l$). Failing that, a district court cannot allow restraints on forfeited property to continue *ad infinitum* without imposing on the government the burden to make a preliminary showing of their continued necessity. The statutory scheme clearly requires that a party, who has property restrained as potentially forfeitable, must have the opportunity to hale the government into a tribunal to require this showing.[7] *See* 18 U.S.C. § 1963(d)(1)(B); *United States v. Thier,* 801 F.2d 1463, 1467–69 (5th Cir.1986); *United States v. Perholtz,* 622 F.Supp. 1253, 1256 (D.D.C.1985); *United States v. Rogers,* 602 F.Supp. 1332, 1342–44 (D.Colo. 1985).

Nor does the fact that the government has some greater interest in an asset after a verdict for its forfeiture obviate the requirement of a showing for the need of restraints as applied against third party claimants. Whatever legal fictions it may rely on, the government to this point has made no showing that it has any title to the Club other than that share in LCP owned by Michael Gilbert: it has declined to put claimants' interests directly in issue at trial by indicting them and the claimants have been specifically barred from participating in the underlying criminal proceeding. The verdict of forfeiture notwithstanding, the government simply has never had its claim to the entire corpus of the Club vigorously challenged, except as to the share held by Michael Gilbert. For us to sanction the imposition of restraints of indeterminate length on such basis, without any provision of the process envisioned by Congress, would violate both the letter and spirit of the statutory scheme.

Additionally, we note that the summary and impromptu hearings held on April 3 and 27 were never intended by the district court as a forum for testing the sufficiency of the government's request for restraints over the Club. Although claimants were allowed to make very brief appearances to register their objections, the district court clearly did not wish to hear or pass on the substance of claimants' challenges, despite their own requests that he do so. The government was also never called on to make any showing of the strength of their case against the claimants or the necessity for a restraining order. We think it is fair to represent these hearings as nothing more than status conferences on procedural issues related to the ancillary hearing and which are insufficient to satisfy the hearing requirements of § 1963.

It is so ordered.

---

**6.** Despite the rigorousness of this schedule, we take notice of the fact that both the government and claimants expressed at oral argument their readiness and eagerness to litigate these issues promptly.

**7.** At this time, we need not define the extent or breadth of procedures required in such hearings because our order for a prompt final hearing under § 1963($l$) makes such an explanation moot.