UNITED STATES of America, Plaintiff,

v.

**ALL TRACT 686.64 ACRES OF PROPERTY, MORE OR LESS, with All Appurtenances and Improvements Thereon, Titled in the Name of George Walter Paul, Jr., and More Fully Described in the Deed Book 7V, Page 332 and Deed Book 7V, Page 334, All Located in the Property Records of Oglethorpe County, Georgia, Defendant.**

**Civ. No. 91–111–ATH(DF).**

United States District Court,
M.D. Georgia,
Athens Division.

April 27, 1993.

Charles E. Cox, Jr., William David Gifford, Macon, GA, for plaintiff.

James E. Hudson, Athens, GA, E. Freeman Leverett, Elberton, GA, for defendant.

FITZPATRICK, District Judge.

This action is brought *in rem* to enforce the provision of 21 U.S.C. § 881(a)(7) for the forfeiture of real property. Defendant's mo-

tion for judgment on the pleadings, summary judgment and partial summary judgment is presently pending before the Court.

## BACKGROUND

### I. MARIJUANA

Defendant is a parcel of property located in Oglethorpe County, Georgia. In April of 1991, the Georgia Bureau of Investigation ("GBI") received information that a large scale marijuana operation was being operated on the 686.64 acres owned by Claimant George Walter Paul, Jr. (Affidavit of Chuck McClure.) James Donald Key told the GBI about the presence of the marijuana after he discovered it while hunting on claimant's property without permission.[1] (Key Deposition, pp. 7, 8, 10.)

On one occasion in October of 1990, Key was hunting without permission on Paul's property when Paul drove by in his truck. Paul stopped his truck and gazed for a minute or so up into the woods where Key sat hidden in his hunting fatigues. (Key Deposition, pp. 13, 14.) Key thought he was about to be "chewed out" by Paul for trespassing since Paul was staring directly at him. (Key Deposition, p. 14.) Paul, however, drove off in his truck without confronting him. (Id.) In November 1990, Key was again hunting on Paul's property without permission when he discovered old dry stalks of marijuana in close proximity to where he had sat hidden one month earlier as Paul conducted his surveillance of the estate. (Id. at 11.) Key recalled the area because there was a single strand of barbed wire surrounding the harvested patch. (Id. at 12.) Key also found an empty fertilizer bag near the marijuana patch.

Approximately four months later, in late March or early April 1991, Key was again trespassing when he discovered a large, freshly planted marijuana crop in the same area where the he discovered the old marijuana stalks. (Id. at 18, 19.) A few days later Key and his friend, Edward Frachiseur, were hunting on the Paul estate, again without permission. Key showed Frachiseur the area where the marijuana was planted. (Id. at 48, 49.) The area, which is commonly referred to as the "Mule Pasture" and also known as the "Powers place," had been cleared of brush and trees, apparently with a chain saw. (McClure Affidavit.) Timber was stacked in piles at the edge of the marijuana field.

On April 18, 1991, Key led three GBI agents to the Mule Pasture. The four parked their vehicle on property that Key leased nearby and walked, during the daylight hours, onto Paul's property. The next day two agents returned to the Mule Pasture to set up surveillance equipment but a thunderstorm forced them to retreat. (McClure Affidavit.)

On April 22, 1991, two GBI agents returned to the Mule Pasture to take photographs and conduct surveillance. They left after approximately five hours but returned later that afternoon. (McClure Affidavit.) At approximately 4:30 p.m., while returning to the Mule Pasture area, the agents encountered local resident, William Collins. The agents, who were dressed in camouflage and armed with semi-automatic pistols, pretended to be turkey hunters and asked Mr. Collins if he had seen any turkeys in the area.

After the agents began conducting surveillance on the Mule Pasture for the second time that day, Paul slowly drove by the pasture immediately in front of the marijuana. The agents observed Paul peering intently onto the area where the newly sprouting crop of marijuana was planted. (McClure Affidavit.) The agents assumed Paul did not detect their presence. The next day, April 23, however, Paul called the local game warden to report finding a field of marijuana planted on his property.

Unbeknownst to the GBI agents, there was a second newly cultivated marijuana field on the Paul Estate located in what is commonly referred to as the "East Pasture" (Aaron Huff place). (McClure Affidavit.) Paul testified that he discovered the marijua

---

1. It must be particularly galling to Claimant that all his troubles began with information furnished to the government by a trespasser and poacher.

na plants while taking a shortcut back to his truck from a pasture where he had been looking to see if any cows or calves remained after he relocated them to another area. (Paul Deposition, pp. 68–70.)

On April 23, 1991, the GBI pulled and eradicated 14,036 marijuana plants located in the East Pasture. The GBI continued to watch the Mule Pasture field for approximately three weeks. (McClure Affidavit.) During this time, Paul was never observed peering into the Mule Pasture as he had done on previous occasions.

On May 15, 1991, GBI undercover agents, with the assistance of local law enforcement, pulled and eradicated 30,346 marijuana plants located in the Mule Pasture. Thus, a total of 44,382 plants were discovered on claimant's property. Claimant's property was seized on August 15, 1991.

## II. HISTORY OF PROPERTY

Claimant Paul inherited the defendant 686.64 acres through the last will and testament of his father, George Paul, Sr. The will states:

[t]o my son George W. Paul, Jr., in fee simple all of the remaining property that consists of my cattle, farm machinery and my farm land.... Said farm land to consist of the following tracts of land:

(a) 95.61 acres known as the Eberhardt place being by a deed dated March 10, 1958, recorded in Deed Book 3–T, page 499, Oglethorpe County, Georgia.

(b) 23,20 acres known as the James Maxwell place being described by a deed dated February 1, 1964, and recorded in Deed Book 5–S, page 656, Oglethorpe County, Georgia Records.

**(c) 71 acres known as the Aaron Huff place being described by deed dated May 2, 1939, recorded in Deed Book DDD, page 429, Oglethorpe County, Georgia Records.**

(d) 81 acres known as Will Tom Patman Place also known as the Boles Place, being located in the 229th District, G.M., recorded in Deed Book 5–8, Page 624, Oglethorpe County, Georgia.

(e) 13.01 acres known as the Mrs. C.L. Harrison place being described by a deed dated April 12, 1955, and recorded in Deed Book 5–S, page 657, Oglethorpe County, Georgia records.

**(f) 120 acres known as the Powers Place described by a deed dated June 11, 1943, and recorded in Deed Book HHH, page 103, Oglethorpe County, Georgia records.**

(g) 81.57 acres known as the S.L. Maxwell place described by a deed dated August 23, 1941, and recorded in Deed Book 5–S, page 655, Oglethorpe County, Georgia Records, and being all the property remaining from a tract originally containing 157.23 acres.

(h) 51 acres known as the Will Patman place described by deed dated December 16, 1929, recorded in Deed Book YY, page 191, Oglethorpe County, Georgia Records.

(i) 51 acres known as the Sally Patman Place described by a deed dated March 30, 1945, and recorded in Deed Book III, page 479, Oglethorpe County, Georgia Records.

The testamentary devise to Paul was confirmed through two "deed of assent," also called "assents to devise." One is dated May 18, 1990, and the other is dated September 13, 1990. Rosa Paul Neesmith, claimant's sister and co-executor of the will, relinquished any right or claim she may have had to her father's estate as the only other surviving child of George Paul, Sr., by these deeds of assent.

The May 18 Deed of Assent vested title to the Eberhardt place, i.e., "(a)" in the will. The September 13 Deed of Assent passed title to the tracts described in (b) through (i) in the will. Parcels "c" and "f", which appear above in boldface, are the two parcels where the marijuana was cultivated.

Both deeds of assent state: "... this assent is made under the provisions of O.C.G.A. § 53–2–108, et seq., to pass title to the devisee named in said will, to-wit, George W. Paul, Jr." [2]

---

**2.** O.C.G.A. § 53–2–108 provides: "All property, both real and personal, being assets to pay debts,

An aerial tax map used by Carl Bryan of the Oglethorpe Tax Assessor's Office indicates that several of the former "tracts" on the Paul Estate have been lumped together. The tax map shows that the "old" tracts number 19, 20, 21, 24 and 25 are now a single tract consisting of 410 acres. This 410 acre tract excludes the 81.57 acres formerly known as the S.L. Maxwell place, and the 195 acres formerly known as the Eberhardt place. The latter two acreages added to the 410 acres totals 686.

## DISCUSSION

Claimant seeks complete summary judgment on the ground that he is an innocent landowner pursuant to 21 U.S.C. 881(a)(7). He also seeks partial summary judgment on seven of the nine tracts on the ground that they were not involved in the marijuana growing. Finally, Claimant seeks judgment on the pleadings for violations of his fifth and eighth and fourteenth amendment rights.

## I. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Due Process Violation

Claimant argues that section 881 violates due process because the section's and the Supplemental Rules for Certain Admiralty and Maritime Claims' seizure and title vesting procedures do not require pre-seizure notice or hearing and because the statute improperly shifts the burden of proof in violation of the due process clause.[3]

#### 1. Pre–Seizure Notice and Hearing

Claimant contends that these forfeiture proceedings violate procedural due process because pre-seizure notice was not provided. The Eleventh Circuit expressly rejected this argument in *United States v. A Single Family Residence,* 803 F.2d 625 (11th Cir.1986), characterizing the appellant's argument as "patently frivolous," *Id.* at 632, in

light of "decisive Supreme Court authority to the contrary." *Id.*

Claimant, however, notes that in *United States v. That Certain Real Property,* 798 F.Supp. 1540 (N.D.Ala.1992), the district court distinguished *A Single Family Residence* stating that the case does not "stand[ ] for the proposition that an *ex parte* seizure of *real property* without 'exigent circumstances' justifying its pre-hearing seizure, can take place without a pre-seizure notice to the property owner and an opportunity to be heard on the issue of 'probable cause.'" *That Certain Real Property,* 798 F.Supp. at 1550 (emphasis in original).

The Alabama district court stated that the predominant reason for its conclusion that the seizure of real property absent notice violated due process was *Jones v. Preuit & Mauldin,* 808 F.2d 1435 (11th Cir.), *vacated on other grounds,* 833 F.2d 1436 (11th Cir. 1987), which held that even if the defendants in a 42 U.S.C. § 1983 action could not be held accountable for an unpublished opinion which declared the Alabama attachment statute at issue in the case unconstitutional, they should have known that attachment without notice was unconstitutional. The district court then noted that in *United States v. Kramer,* 912 F.2d 1257 (11th Cir.1990), the Eleventh Circuit held that in a RICO forfeiture proceeding "'a district court cannot allow restraints on forfeited property to continue *ad infinitum* without imposing on the government the burden to make a preliminary showing of their continued necessity.'" *That Certain Real Property,* 798 F.Supp. at 1548 (*quoting Kramer,* 912 F.2d at 1261). The district court concluded that the holding in *Kramer* was consistent with footnote one in *United States v. $38,000,* 816 F.2d 1538 (11th Cir.1987) in which the "Eleventh Circuit says that Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims is constitutional in its application only

---

no devise or legacy shall pass the title thereto until the assent of the executor is given the devise or legacy."

**3.** 19 U.S.C. § 1615 provides in pertinent part:
In all suits or actions ... where the property is claimed by any person, the burden of proof shall lie upon such claimant; ... *Provided,*

That probable cause shall be first shown for the institution of such suit or action, to be judged by the court ...

The section is made applicable to section 881 forfeiture actions by 21 U.S.C. § 881(d). *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1439 n. 23 (11th Cir.1991).

in '*exigent circumstances.*'" *That Certain Real Property,* at 1548 (emphasis in original).

As much as this Court disagrees with the conclusion in *A Single Family Residence* and agrees with the Alabama district court as well as with several circuits, which have held that seizure of real property without notice violates due process, *See, United States v. James Daniel Good Property,* 971 F.2d 1376, 1384 (9th Cir.1992), cert. granted, —— U.S. ——, 113 S.Ct. 1576, 123 L.Ed.2d 145 (1993); *Richmond Tenants Organization, Inc. v. Kemp,* 956 F.2d 1300 (4th Cir.1992); *United States v. Property at 4492 S. Livonia Rd.,* 889 F.2d 1258 (2d Cir.1989), the Court, unfortunately, is compelled to reject the Alabama district court's conclusion in *That Certain Real Property* for several reasons.

First, the broad language in *A Single Family Residence* prevents its summary dismissal. In *A Single Family Residence* the residence was seized without notice to the claimant. After the government had already filed its complaint the claimant filed a verified claim and motion for *return* of the property. The court later held a probable cause hearing. When confronted with claimant's due process argument the Eleventh Circuit stated:

> Under Section 881, a seizure is initiated by the filing of a verified complaint alleging probable cause to believe that the owner of the property is subject to seizure. 21 U.S.C.A. 881(b) & Supp. Rule C(2), Fed. R.Civ.P. Upon filing this complaint, the clerk of court issues a warrant for an arrest of the property. Supp. Rule C(3). There is no requirement of detailed allegations and there is no provision for judicial review before the warrant is issued. It is beyond dispute, however, that due process is satisfied by this procedure. The United States Supreme Court has held that seizure for purposes of forfeiture presents an extraordinary situation justifying postponement of notice and hearing. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679–80, 94 S.Ct. 2080, 2089–91, 40 L.Ed.2d 452, *reh'g denied,* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). Under *Calero–Toledo,* it is well settled that no prior judicial determination that seizure is justified is required when the government seizes items subject to forfeiture. [citation omitted] Therefore, [claimant's] argument that Section 881 denies procedural due process because it allows a government agent to make the initial determination to seize the property is without merit.

803 F.2d at 632. Thus, the Eleventh Circuit, unlike the other circuits that have addressed the issue, failed to distinguish *Calero–Toledo* on the grounds that exigent circumstances were involved in the seizure of yacht, whereas exigent circumstances are not present in seizure of real property.

Second, in footnote one of *$38,000* the Eleventh Circuit did not state that Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims may only be constitutionally applied in exigent circumstances. Rather the panel merely noted that "[n]umerous courts ... have held that the Supplemental Rules are unconstitutional when applied to § 881 forfeiture actions. [citations omitted] Other courts have upheld the use of these rules only by reading into the rules probable cause and 'exigent circumstances' requirements that are not explicitly stated in them." 816 F.2d at 1540. While it is interesting to note that the panel made no reference to the position taken in *A Single Family Residence,* it was not stating the Eleventh Circuit's position nor did it cite either view in an approving manner.

Third, in *Kramer* the Eleventh Circuit was confronted with third party claimants who had been denied a hearing expressly provided for under the RICO statutory scheme. Under 18 U.S.C. § 1963(*l* ), a third party who asserts a legal interest in property forfeited under § 1963(a) is permitted to petition the district court for a hearing to adjudicate the validity of his claim to the property. The hearing is the third party's sole remedy and must be held within thirty days, if possible. 912 F.2d at 1260; 18 U.S.C. § 1963(*l* )(4). Thus, the portion quoted in *That Certain Real Property* was taken out of context. The statement actually is referring to interested third parties whose rights are expressly provided for under RICO's statutory scheme. In contrast, section 881 does not explicitly provide for pre-seizure notice or a hearing.

Fourth, the *Preuit & Mauldin* decision cited was vacated, which means it is void. After a lengthy history the Eleventh Circuit's ultimate holding in *Preuit & Mauldin* was that the district court properly granted summary judgment on the ground that the plaintiff failed to file suit within the statute of limitations. *See Jones v. Preuit & Mauldin,* 876 F.2d 1480 (11th Cir.1989). Finally, the Court notes that the cases relied upon by the Alabama district court were decided by panels after *A Single Family Residence* was decided. Therefore, even if the cases cited by the Alabama court state an implicit disagreement with the holding in *A Single Family Residence,* it is still controlling precedent in this circuit until overruled in an *en banc* decision. *See McDaniel v. Fulton Nat. Bank of Atlanta,* 578 F.2d 1185 (5th Cir. 1978) ("[t]he established policy of [this circuit] is to recognize the binding effect of a prior decision by another panel of [this] [c]ourt subject only to reversal by the [c]ourt sitting en banc.") Consequently, the Court is compelled to reject the reasoning in *That Certain Real Property* and the Claimant's contention that his due process rights were violated. The Court, however, would gladly accept a reversal on this point.

### 2. Shifting Burden of Proof

■ Claimant contends that the arbitrary shifting of the burden of proof in a forfeiture case violates due process. As stated, the government only is required to establish probable cause, which "refers to reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. Four Million Two Hundred Fifty Five Thousand,* 762 F.2d 895, 903 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). Once the government has established probable cause title vests in the government and the burden of proof shifts to the claimant to file a claim and prove his innocent owner defense by a preponderance of the evidence. *One Single Family Residence Located at 15603 85th Ave. N.,* 933 F.2d 976, 979 (11th Cir.1991).

The First, Second, Fourth, Ninth and Tenth Circuits have all rejected Claimant's argument. *United States v. 228 Acres of Land and Dwelling,* 916 F.2d 808, 814 (2d Cir.1990, *cert. denied,* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991) ("We find nothing unconstitutional in Congress' allocation of the burdens of proof in forfeiture cases."); *United States v. $250,000 in United States Currency,* 808 F.2d 895, 900 (1st Cir. 1987) ("[g]enerally, Congress may alter the traditional allocation of the burden of proof without infringing on the litigant's due process rights unless the statute is criminal in nature"); *United States v. Santoro,* 866 F.2d 1538, 1544 (4th Cir.1989) ("Congress may alter the burden of proof in a civil proceeding as it sees fit, without constitutional implications."); *United States v. $2,500,* 689 F.2d 10, 12 (2d Cir.1982) (allocation of burden of proof in civil forfeiture action does not violate due process), *cert. denied sub nom. Aponte v. United States,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984); *United States v. One 1970 Pontiac GTO,* 529 F.2d 65, 66 (9th Cir.1976) (upholding constitutionality of 21 U.S.C. § 881 and 19 U.S.C. § 1815); *Bramble v. Richardson,* 498 F.2d 968 (10th Cir. 1974), *cert. denied sub nom. Bramble v. Saxbe,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). The Eleventh Circuit, like the foregoing circuits, views forfeiture under section 881 as a civil proceeding. *See United States v. Real Property and Residence,* 921 F.2d 1551, 1557 (11th Cir.1991). Therefore, the Court holds that the shifting burden of proof in civil forfeiture actions does not violate due process.

### B. Eighth Amendment

■ Finally, Claimant contends that a holding that all nine parcels of land are subject to forfeiture is a violation of the eighth amendment, which prohibits disproportionate punishments. First, the eighth amendment would not be implicated unless the jury determined that all the property should be forfeited. Second, even if this court were to hold that all nine tracts were subject to forfeiture and the jury found for the government, the eighth amendment's proportionality analysis would not be applicable. In *Real Property and Residence,* 921 F.2d at 1557, the Eleventh Circuit rejected the claimant's disproportionality argument stating "the eighth amendment proportionality analysis

... [does not] apply in civil forfeiture cases." Thus, Claimant's argument fails at the present time.[4]

## II. MOTION FOR SUMMARY JUDGMENT

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of a summary judgment motion, the non-movant's version of the facts must be accepted, and all disputed matters must be resolved in favor of the non-movant. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Summary judgment, however, is mandated, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Claimant's property was seized pursuant to 21 U.S.C. § 881(a)(7), which provides:

[t]he following shall be subject to forfeiture to the United States and no property right shall exist in them:

(7) All real property including any right, title, and interest (including any leasehold-interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit or to facilitate the commission of

a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Claimant argues that the record is devoid of any evidence that he had actual knowledge of the marijuana on his property. When a claimant in a forfeiture proceeding seeks summary judgment the initial inquiry for the Court is "whether as a matter of law, the government has shown probable cause." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1439 (11th Cir.1991). Where, as in the present case, probable cause is established,[5] the claimant "still may be entitled to summary judgment, if he affirmatively shows the absence of a triable issue on which he has the burden of proof—that is, taking all the evidence in the light most favorable to the government, no reasonable jury could award the property to the government." *Id.; see United States v. $41,305.00 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir.1986); *Four Parcels of Real Property*, 941 F.2d at 1442 (*citing United States v. Single Family Residence & Real Property Located at 900 Rio Vista Blvd.*, 803 F.2d 625, 629 (11th Cir.1986)).

In the Eleventh Circuit a claimant may prove that he is an innocent landowner by proving *either* that he was ignorant[6] of the illegal activity *or* that he did not consent to the illegal activity. *United States v. One Parcel of Real Estate*, 963 F.2d 1496, 1503

---

4. There is a split in the circuits concerning the applicability of the eighth amendment in civil forfeiture. The First, Third, Fourth, Eighth and Ninth Circuits take the same position as the Eleventh Circuit. *See United States v. One Parcel of Property*, 964 F.2d 814, 818 (8th Cir.1992), *cert. granted sub nom. Austin v. United States*, ——— U.S. ———, 113 S.Ct. 1036, 122 L.Ed.2d 347 (1993); *United States v. One Parcel of Real Property*, 960 F.2d 200, 207 (1st Cir.1992); *United States v. One 107.9 A. Parcel of Land in Warren T.P.*, 898 F.2d 396, 400 (3d Cir.1990); *Santoro*, 866 F.2d at 1544; *United States v. Tax Lot 1500*, 861 F.2d 232, 235 (9th Cir.1988). In *United States v. Certain Real Properties and Premises (38 Whalers Cove Drive)*, 954 F.2d 29, 33–39 (2d Cir.1992), however, the Second Circuit held that

the eighth amendment was applicable in a civil forfeiture proceeding.

5. Claimant did not challenge probable cause in his motion for summary judgment. Therefore, it is presumed to exist for purposes of this motion.

6. The issue of whether the claimant should have known or constructive knowledge is not at issue. *United States v. Real Property & Improvements Located at 5000 Palmetto Drive*, 928 F.2d 373, 375 (11th Cir.1991); *United States v. $4,255,000*, 762 F.2d 895, 906 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

(11th Cir.1992). If a claimant attempts to prove lack of knowledge, then he must prove an absence of actual knowledge, *Four Million Two Hundred Fifty Five Thousand*, 762 F.2d at 905, *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986), and that he did not "turn a blind eye" or act "wilfully blind" with respect to the illegal activity. *United States v. One Parcel of Real Estate*, 721 F.Supp. 287, 290 (S.D.Fla.1989) (deliberate avoidance of positive knowledge is the equivalent of knowledge), *aff'd*, 914 F.2d 268 (11th Cir.1990).

Paul's evidence shows that he is 57 years old and that he has been farming his property since he was 19 years old. (Id. at 59.) His land is located in a remote part of Oglethorpe County, consisting of pastures and heavily wooded areas. Approximately 300 acres of the property is timber, which Mr. Paul sells. (Paul Deposition at 29.) He raises cattle, hay, goats and some poultry, and chickens. (Id. at 6, 8.) He sells timber from his property and also cooks and sells barbecue on Saturdays in order to make extra money. (Id. at 8–9, 59.) His wife works 20 hours a week in the local library. (Id. at 81.)

Mr. Paul does not customarily walk through the woods where the two marijuana patches were found, but he does normally ride in the pastures around the marijuana patches where his cattle are grazing. (Paul Deposition at 27, 42.) He does not need to go further to count his cows because they come to his truck and he can count them. (Id. at 43; Affidavit of Alice Slay Paul.) He does not own a 4–wheel terrain vehicle that would permit him to ride in the wooded area. He rarely has to check timber because he can see the tops of most of the trees from his truck as he drives on the roads and there is no reason to go check it unless he sees one dying. (Id. at 29.) He does not hunt nor does he or anyone else ride motorcycles or all-terrain vehicles on his property for recreation. (Id. at 29, 30, 43.)

Paul has filed his tax returns, (Id. at 6–7.), has a safety deposit box but no large amounts of cash, (Id. at 15.), and he has not transferred any assets over $1,000.00 to family members or friends recently. (Id. at 15–16.) He does not have a mortgage on the land but he does have a small one on his home. (Id. at 13.) He has other personal debts of under $2,000 to local hardware stores and one less than $5,000 to the Union Point Bank. (Id. at 14.)

He came across the marijuana planted in the East Pasture when he was taking a shortcut through the woods to his truck. (Id. at 59.) Paul stated that he had moved his cows from one pasture to another and he went to the former pasture to make sure that no cows or calves [7] had been left behind. He was unable to ride into the pasture with his truck because there had been heavy rains in the area and the truck might have gotten bogged in the mud. His wife was with him and they decided to take a short cut through the woods rather than walking back through the pasture. (Id. 59–71.) He normally does not check the wooded area for calves because that requires too much walking and he knows when a calf is lost because its mother calls for it. (Id. at 72.)

After discovering the marijuana he left because he was scared and never returned for the same reason. (Id. at 80.) He reported his discovery to the Game and Fish Warden. Paul categorically denies any involvement in the marijuana plants and any knowledge of its existence as well as denying that he permitted anyone to have access to his property to plant the marijuana. (Id. at 90.)

Mr. Paul also offered the affidavits of a number of people who stated that they have had unrestricted access to Claimant's property and that he never told them not to go on any certain area of the property. (See Affidavits of Susan Robertson, Curtis Arthur, Kim Argo, Robert Lamotte, James Matthews, William Collins, Garland Hill, David Barrentine, Jimmy Wall, Graham Eason,

---

7. The government attacks Mr. Paul's explanation of how he came to discover the second field stating that he was looking for a nonexistent calf. A careful reading of his deposition, however, shows that such an assertion misrepresents Claimant's testimony. Mr. Paul testified that he had recently moved some cattle from one pasture to another and, as was his custom, he returned to the pasture the cattle had been moved from to ensure that no cattle had been left. He did not testify that he was looking for one specific calf.

John Black and David Simmons.) Of particular note is Mr. Eason's affidavit. Mr. Eason states that he cruises timber for the Southland Timber Company. Mr. Paul gave him unrestricted access to the farm to check it for timber around October, 1990. He further states his company was cutting "pretty close to the area where I understand one patch of marijuana was found." (Eason Affidavit.) [8] Therefore, the burden shifts to the government to show that there is a genuine issue of material fact.

Although not an exhaustive list, the government's evidence can be distilled to some degree to the following pertinent facts: (1) a large amount of marijuana was located on Claimant's property; (2) on two occasions Mr. Paul was observed staring up into the woods towards the Mule Pasture where some of the marijuana was located; (3) Mr. Paul drove by and stared up towards the Mule Pasture later the same day that the two GBI agents who were conducting surveillance ran into one of his neighbors; (4) the day after the GBI agents ran into Mr. Paul's neighbor and observed Paul staring towards the Mule Pasture, Mr. Paul reported discovering the marijuana field in the East Pasture, and (5) the Mule Pasture had been cleared of brush and trees.

Unlike many forfeiture cases, there is no evidence in the instant case showing large sums of money from unknown sources and Claimant was not discovered with any drugs on his person or even discovered in the pastures where the marijuana was planted. Nevertheless, this Court must "resolve all reasonable doubts about the facts in favor of the non-movant." *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990). In the instant case, the timing concerning Paul's discovery of the second marijuana patch, his staring towards the pasture, which could be innocent or a check to see if the marijuana was visible from the road, the tremendous amount of

marijuana, as well as other disputes concerning the placement of alleged fences and gates, among other things, raises a reasonable inference of actual knowledge. Therefore, there is a genuine issue of material fact, which precludes summary judgment.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

■ Claimant moves for partial summary judgment on the issue of how much land is subject to forfeiture. Claimant contends that the only portions of his property subject to forfeiture are the two tracts on which the marijuana was discovered. The government contends that the entire 686.64 acres is subject to forfeiture.

The language in 18 U.S.C. § 881(a)(7) does not place "an express territorial limit on the extent of real property that is forfeitable." *United States v. Property at 4492 S. Livonia Rd.,* 889 F.2d at 1270. Rather section 881(a)(7) simply states that "[a]ll real property, including any right, title, and interest *in the whole of any lot or tract of land ...*" is forfeitable. (Emphasis added.) The construction of the italicized phrase is an issue of first impression in this circuit. Thus, the Court turns to decisions in other circuits for guidance.

The Sixth and Fourth Circuits both have addressed the issue of defining "a lot or tract of land." In *United States v. Santoro,* 866 F.2d 1538 (4th Cir.1989), the Fourth Circuit stated that the "whole of any lot or tract of land" must be determined from the duly recorded instruments and documents filed in the county offices where the defendant property is located. *Id.* at 1543 (citing *United States v. Reynolds,* 856 F.2d 675 (4th Cir. 1988) (tract defined by instrument creating the interest in the property)). Thus, in order to ascertain the amount of land forfeitable, the Court must look to the recorded instruments and the documents that created the

---

8. The Government attacks these affidavits on the grounds that they contain hearsay statements of his neighbors. The statement that Paul has given them unrestricted access to his property is not hearsay. Furthermore, while it is true that affidavits submitted in support of summary judgment must be made on the basis of personal knowledge and must set forth facts that would be admissible at trial, *see* Fed.R.Civ.Proc. 56(e), the evidence needed not be produced *"in a form* that would be admissible at trial ... to avoid summary judgment," *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, it simply must be "reduc[ible] to admissible evidence." *Id.* at 327, 106 S.Ct. at 2555.

defendant's interest in the property. *United States v. Smith*, 966 F.2d 1045, 1053 (6th Cir.1992) (adopting the Fourth Circuit's property-identification rule).

In *Reynolds* the claimant argued that she should not have to forfeit a thirty acre parcel, which she possessed under an option to purchase, because she had only used a small portion of the parcel to violate Title 18. The Fourth Circuit rejected the claimant's argument because the lease defined the thirty acre parcel as a single tract. In *Santoro* the claimant argued that her twenty-six acre parcel should be considered as two tracts because it was bisected by a road and had been taxed as two separate tracts. The appellate court again rejected the claimants argument because the deed described the property as one tract. In *Smith* the claimant had obtained his land through four separate conveyances of four separate tracts to he and his former wife. The land was held as a tenancy by the entirety. When the couple divorced, the wife conveyed all of her interest in the property to the claimant by a quitclaim deed, which the claimant recorded. The government argued that since the wife conveyed all four tracts as one single unit in the quitclaim deed, the entire farm was subject to forfeiture. The Sixth circuit, after analyzing Tennessee law on tenancy by the entirety, concluded that the claimant "obtained his interest in the land by the four separate deeds that created the tenancy by the entirety." *Smith*, 966 F.2d at 1055.

In the instant case, the government contends that George Paul, Sr.'s will and the deeds of assent, which created Claimant's interest in the property, are like the interest-creating instruments in *Reynolds* and *Santoro*, which described the subject properties as one tract of land, and unlike the four separate conveyances in *Smith*. The Court agrees that the will created Claimant's interest in the property but disagrees that the will conveyed a single tract of land.

The will breaks the conveyance down into the separate tracts owned by Claimant's father. The deeds of assent also describe the property as nine separate tracts. The gov-

ernment argues, however, that claimant is attempting to step into the shoes of his father and that the claimant has always treated the farm as one unit. As the Fourth Circuit stated in *Santoro*, the "subjective characterization of the property ... cannot serve as a legal basis for determining the number of tracts present for purposes of 21 U.S.C. 881(a)(7)." 866 F.2d at 1543. Therefore, neither claimant's treatment of the land nor his father's general description of the land as "the farm" can define the tract subject to forfeiture when the will describes it as nine separate tracts. Moreover, as demonstrated by *Santoro*, the manner in which the property is taxed does not define the amount of property subject to forfeiture.[9]

Furthermore, the fallacy of the government's position can be illustrated by the its answer to a hypothetical question posed by the Court. The Court asked the government how many lots would be subject to forfeiture if a deed conveyed 4 lots in a subdivision to a builder and marijuana was discovered growing on one lot. The government conceded that only the lot with the marijuana growing on it would be subject to forfeiture. The government's answer either contradicts its position in the instant case or implies that tracts are somehow treated differently than lots. Nothing in the statute indicates that a lot is treated differently than a tract nor was the government able to offer an explanation of why it would or should be treated differently. Consequently, the government's answer contradicts its position in the instant action. The Court's conclusion, however, does not end its inquiry into the number of tracts subject to forfeiture.

The government argues that even if the Court concludes that there are nine separate tracts, at least eight are still subject to forfeiture because six tracts were used to shield the fields of marijuana. In *Smith* the claimant argued that a particular tract should not be forfeited because no marijuana was growing on it. The evidence showed that a cornfield extended across the tract with the marijuana patch onto an adjacent

---

9. At oral argument the government stated that the tax assessor treated the property as two tracts. Claimant represented that he was sent a separate tax notice for each tract.

**1444**

tract without marijuana. The district court found that the presence of the cornfield on the adjacent tract facilitated the commission of the offense by concealing the marijuana on the other tract. The Sixth Circuit held that "when the [claimant] uses real property to *actually physically conceal* the commission of an offense on adjacent property, the nexus is sufficient to support a finding that the property 'facilitated' commission of the offense under 21 U.S.C. § 881(a)(7)." *Smith*, 966 F.2d at 1055 (emphasis in original).

■ In contrast to the claimant in *Smith*, there is no evidence that Paul did anything to the tracts adjoining the Mule Pasture or the East Pasture to shield them from view. The trees on those tracts appear to be the natural condition of the property. The Court declines to hold as a matter of law that property, which has terrain or natural conditions that offer protection to adjacent tracts with marijuana planted on them "facilitate" the commission of an offense under the drug laws. Taking advantage of the natural conditions on property, which may make the tract a natural shield for a marijuana field, is not the same as doing something to the land, like planting corn, to shield a marijuana field.

### CONCLUSION

Accordingly, for the reasons stated above, Claimant's motion for judgment on the pleadings is **DENIED**, motion for summary judgment is **DENIED** and motion for partial summary judgment is **GRANTED**.

SO ORDERED.